OPINION
 

 By the Court,
 

 Gibbons, C. J.:
 

 In this appeal, we principally consider whether the district court violated appellant Donald Mitchell’s Fifth Amendment privilege against self-incrimination when the court ordered him to undergo a compulsory psychiatric examination after he claimed that he justifiably fired in self-defense because his post-traumatic stress disorder caused him to suffer from a heightened threat perception. We conclude that Mitchell’s Fifth Amendment rights were not violated because he placed his mental state directly at issue. Concluding otherwise would permit him to enjoy the unfair asymmetry of being able to introduce defense expert witness testimony based upon personal interviews while denying State expert witnesses the
 
 *810
 
 same access. Mitchell also asserts a variety of other contentions, all of which we conclude lack merit. Accordingly, we affirm Mitchell’s conviction for second-degree murder with the use of a deadly weapon.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 On July 24, 2005, Shannon Butler held a pool party in Las Vegas at her apartment complex. Mitchell drove over to the party and arrived heavily intoxicated. Shortly after his arrival, he became involved in a heated discussion with the victim, Edward Charles. Mitchell and Charles had a history of violent confrontations. After some words were exchanged, Mitchell stated that he had a pistol in his vehicle and that somebody was going to get shot after he returned. Mitchell left the party for a few minutes and then returned with a pistol. Mitchell and Charles again exchanged words, and thereafter, shots were fired. While the parties dispute who fired first, or whether Charles fired at all, the record indicates that Mitchell repeatedly fired his pistol at Charles and killed him. Later that evening, doctors treated Mitchell for superficial gunshot wounds to his neck and hand.
 

 Based upon these events, the State charged Mitchell with murder with the use of a deadly weapon. Before trial commenced, Mitchell requested a psychiatric examination from Drs. Thomas Bittker and Louis Mortillaro. Both of these doctors concluded that Mitchell truthfully answered the test questions and that he suffered from post-traumatic stress disorder, hypervigilence, and paranoia. Based upon these medical opinions, Mitchell pleaded not guilty, claiming that he fired in self-defense as his mental disorders caused him to overestimate the threat of attack and inhibited his ability to form the requisite mens rea to be guilty of murder. Mitchell did not plead an insanity defense. Mitchell waived his right to a jury, and the case proceeded as a bench trial.
 

 To rebut the opinions of Mitchell’s experts, the State moved to have Mitchell examined by an independent psychiatric expert. Over Mitchell’s objection, the district court granted the State’s motion. After reviewing the results from two days of examination, Dr. David Schmidt concluded that Mitchell malingered during the psychiatric examination so that he would appear excessively pathological.
 

 The State notified Mitchell that Dr. Schmidt would testify at trial and also provided Mitchell with a copy of the examination data and computer scoring on which Dr. Schmidt based his opinion. However, the State did not provide Mitchell with certain background material regarding Dr. Schmidt’s qualifications and prospective testimony.
 

 
 *811
 
 Mitchell testified during direct examination that he was a truthful person. Thereafter, on cross-examination, the State questioned Mitchell about an instance when he prank called 911 about a terrorist attack. After Drs. Bittker and Mortillaro rendered their psychiatric evaluations and testified that Mitchell suffered from post-traumatic stress disorder, the State questioned them on cross-examination about whether they were aware of an instance in elementary school when Mitchell threatened another student with a knife.
 

 At the conclusion of trial, the district court found that Mitchell killed Charles with malice aforethought, did not shoot in self-defense, and thus was guilty of second-degree murder with the use of a deadly weapon. Thereafter, the district court sentenced Mitchell to life imprisonment, with parole eligibility after ten years, for the second-degree murder conviction and an equal and consecutive sentence for using a deadly weapon. The court awarded Mitchell 506 days’ credit for time served in local custody before sentencing.
 

 On appeal, Mitchell assigns numerous procedural errors, the most significant being that the district court violated his Fifth and Fourteenth Amendment rights when it ordered him to undergo a compulsory psychiatric examination by an independent psychiatrist and, thereafter, allowed that expert to testify about the results of the examination at trial. He also asserts the following claims of error: (1) the State did not present sufficient evidence at trial for a rational trier of fact to convict him of second-degree murder with the use of a deadly weapon; (2) the district court erred when it allowed the State to inquire into his prior bad acts; (3) the district court abused its discretion when it allowed the State’s expert witness, Dr. Schmidt, to testify even though the State did not provide the pretrial disclosures mandated by NRS 174.234; and (4) the district court erred when it allowed the State to question Dr. Schmidt about the results of his psychiatric exam. We discuss each of these contentions in turn.
 

 DISCUSSION
 

 Mitchell’s compelled psychiatric examination
 

 Mitchell argues that the district court violated his Fifth Amendment privilege against self-incrimination and his due process rights when it ordered him, over his motion, to undergo an independent psychiatric examination. Mitchell particularly contends that a district court can order a compulsory psychiatric examination only when a defendant raises an insanity defense. We disagree and con-
 
 *812
 
 elude that the district court did not abuse its discretion when it ordered Mitchell to undergo a psychiatric examination.
 
 [1]
 

 At the outset, we note that the Fifth Amendment bars the government from compelling a person to incriminate oneself and also bars the government from introducing compelled statements into evidence at trial.
 
 [2]
 
 In
 
 Estes v. State,
 
 this court reviewed a similar issue and concluded that the State may introduce the results of a court-ordered psychiatric examination, and any related testimony, as long as the evidence is introduced only to rebut a defendant’s insanity defense and does not relate to his or her culpability for the charged offense.
 
 [3]
 
 However, this court has yet to consider whether the district court may order a defendant to undergo a psychiatric examination, and whether the State may introduce the results of that examination, when a defendant claims that his or her actions were justifiable because of post-traumatic stress disorder. We conclude that it is within the district court’s discretion to order a defendant to undergo a psychiatric examination when a defendant claims that his criminal acts were justifiable because he suffers from post-traumatic stress disorder. Moreover, we conclude that in such a situation the State may introduce the results of the compulsory examination in order to rebut the defendant’s claim. In reaching this conclusion, we are persuaded by the reasoning of those courts that have addressed the issue of compulsory psychiatric examinations, albeit in other factual and legal contexts — namely, battered-spouse syndrome and insanity. We turn now to an examination of those cases.
 

 Battered-spouse cases
 

 Various state courts have concluded that a defendant’s Fifth Amendment right against self-incrimination is not violated when a district court orders him or her to undergo a compulsory psychiatric examination after he or she claims self-defense based upon battered-spouse syndrome.
 
 [4]
 
 In
 
 State v. Briand,
 
 the New Hampshire
 
 *813
 
 Supreme Court held that the trial court had the inherent authority to order the psychiatric examination of the defendant, even though she did not raise an insanity defense, based upon the trial court’s “respons ibilities both to promote the ascertainment of truth and to insure the orderliness of judicial proceedings.”
 
 [5]
 
 In
 
 State v. Manning,
 
 the Ohio Court of Appeals noted that a compelled psychiatric examination was proper because the defendant placed his or her state of mind directly into issue.
 
 [6]
 
 To prevent a potential asymmetry, the Supreme Court of Florida, in
 
 State
 
 v.
 
 Hickson,
 
 concluded that the defendant faced the following choice: (1) if she wanted to introduce defense expert testimony about her own particular state of mind, then she must submit to a psychiatric examination by state experts; or (2) if she did not want to submit to a psychiatric examination by state experts, then both parties would be limited to general expert testimony about battered-woman syndrome.
 
 [7]
 

 The reasoning in these cases involving claims of self-defense based on battered-spouse syndrome convinces us that the district court did not abuse its discretion in ordering Mitchell to undergo a compulsory psychiatric evaluation when he claimed self-defense based upon post-traumatic stress disorder for three reasons. First, similar to the
 
 Briand
 
 court, we conclude that the district court had the inherent authority to order the psychiatric examination, even though Mitchell did not raise an insanity defense, because the district court had the responsibility to promote the ascertainment of truth and to ensure the orderliness of the proceedings. Second, and more specifically, we find the reasoning in
 
 Manning
 
 to be persuasive because Mitchell placed his mental state directly into issue when he claimed that he acted in self-defense based upon his threat perception arising from post-traumatic stress disorder. Third, as observed in
 
 Hickson,
 
 if the district court were unable to order
 
 *814
 
 a psychiatric examination, Mitchell would enjoy the unfair asymmetry of introducing his own favorable expert testimony based upon personal interviews, while limiting the State’s ability to rebut his contentions to cross-examining those defense experts and introducing generalized expert testimony. Next, we turn to those courts that have allowed compulsory psychiatric examinations in the context of a defendant’s claim of insanity.
 

 Insanity cases
 

 Federal caselaw addressing compulsory psychiatric examinations when a defendant pleads insanity further persuades us that the district court did not abuse its discretion when it ordered Mitchell to undergo a compulsory psychiatric evaluation. Several federal appellate courts have determined that a trial court may order a defendant to undergo a psychiatric examination when his or her sanity is at issue.
 
 [8]
 
 Essentially, these courts base their reasoning on the following three rationales: (1) the defendant placed his or her mental state into issue,
 
 [9]
 
 (2) society requires the court to strike a
 
 *815
 
 “ ‘fair state-individual balance,’ ”
 
 [10]
 
 and (3) the examination is the most reliable means for the state to assess the defendant’s mental capacity.
 
 [11]
 

 We find the reasoning of these federal appellate courts compelling and conclude that an application of these principles in the instant case militates in favor of allowing the district court to order, and the State to introduce the results of, a compulsory psychiatric examination. First, Mitchell put his mental state into issue when he claimed that he acted in self-defense and that his actions were reasonable because he suffered from post-traumatic stress disorder. Second, the court-ordered psychiatric evaluation struck a fair state-individual balance because (1) the State bore the burden of proving that Mitchell’s conduct was not justifiable or excusable,
 
 [12]
 
 and (2) the State could effectively rebut Mitchell’s defense only by presenting contradictory expert opinion testimony. Third, the psychiatric evaluation was the most reliable means for the State to assess Mitchell’s culpability. If the State could not personally examine Mitchell, then the State could refute Mitchell’s self-defense theory only by cross-examination of his experts, lay testimony, and testimony by the State’s experts, predicated solely on courtroom observations and hypothetical situations. These are poor and unsatisfactory substitutes for Dr. Schmidt’s testimony, which was based upon two days of testing and interviews. Finally, none of the cases that we find persuasive either directly, or in dictum, concluded that a district court has the inherent authority to order a defendant to undergo a psychiatric evaluation
 
 only
 
 when he or she asserts an insanity defense.
 
 [13]
 

 For the foregoing reasons, we conclude that the district court did not abuse its discretion when it ordered Mitchell to undergo a psychiatric examination after he claimed justifiable self-defense based
 
 *816
 
 upon post-traumatic stress disorder. Accordingly, we conclude that the compulsory psychiatric examination did not violate Mitchell’s constitutional rights.
 

 Sufficiency of the evidence
 

 Mitchell argues that the State did not present sufficient evidence at trial for a rational trier of fact to find him guilty beyond a reasonable doubt of second-degree murder with the use of a deadly weapon. We disagree.
 

 When determining whether a verdict was based on sufficient evidence to meet due process requirements, this court will inquire “ ‘whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ”
 
 [14]
 
 This court will not reweigh the evidence or evaluate the credibility of witnesses because that is the responsibility of the trier of fact.
 
 [15]
 
 To support a guilty verdict under NRS 193.165, 200.010, and 200.030, the State must prove beyond a reasonable doubt that the defendant killed another person with malice aforethought and used a deadly weapon in the commission of the crime.
 

 After viewing the evidence in the light most favorable to the prosecution, we conclude that there is sufficient evidence in the record for a rational trier of fact to find that Mitchell violated the essential elements of NRS 200.010, 200.030, and 193.165. The State proved the malice aforethought element beyond a reasonable doubt after presenting (1) testimony that Mitchell and Edward Charles had a long history of violent confrontations; (2) testimony that Mitchell stated that he had a firearm in his car and that he was going to “crack crack when I come back’’ or “clap clap when I come back’’; (3) testimony that Mitchell left the party, and then a few minutes later, returned while fiddling with an object behind his waistband; and (4) evidence that Mitchell fired approximately five rounds at Charles and two of the bullets struck him. The State proved the deadly weapon enhancement beyond a reasonable doubt because (1) witnesses testified that they saw Mitchell draw and fire a pistol, (2) Mitchell’s left hand tested positive for gun powder residue, and (3) police located .357 ammunition in Mitchell’s pocket. Finally, the very fact that the victim died from a gunshot wound necessarily evidences the use of a deadly weapon — a gun.
 

 
 *817
 

 The State’s cross-examination into Mitchell’s prior bad acts
 

 Mitchell contends that the district court erred when it allowed the State to cross-examine him about his prank 911 call to police. Mitchell also argues that the district court erred when it allowed the State to cross-examine Drs. Bittker and Mortillaro about an incident involving Mitchell’s threat to another student involving a knife in grade school. The State argues that this court should not consider Mitchell’s argument because he did not object to the cross-examination questions at trial. Generally, a party’s failure to raise an issue at trial precludes review of the issue on appeal.
 
 [16]
 
 However, this court may review a claim of error that was not objected to below for plain error that affected the defendant’s substantial rights.
 
 [17]
 
 To show that an error affected substantial rights, the defendant generally must demonstrate prejudice.
 
 [18]
 
 In this case, we review Mitchell’s prior bad acts arguments for plain error because he failed to object to the State’s cross-examination questions at trial. Addressing each of these claims in turn below, we conclude that they do not rise to the level of plain error.
 

 The prank 911 call
 

 As a general rule, “proof of a distinct independent offense is inadmissible” during a criminal trial.
 
 [19]
 
 However, if a defendant offers evidence concerning his good character, then the State may offer evidence of his bad character under NRS 48.045(l)(a). Furthermore, after evidence of the defendant’s character has been presented, the State may inquire into specific instances of his or her conduct during cross-examination under NRS 48.055(1). Under NRS 50.085(3), the State may inquire into specific instances of a witness’s conduct during cross-examination if those instances are relevant to truthfulness.
 

 We conclude that the district court did not err when it allowed the State to cross-examine Mitchell about his prank 911 call to police because he put his character into issue. During direct examination, Mitchell twice testified that he was a truthful person. The State did not violate NRS 48.055(1) or NRS 50.085 because the State questioned Mitchell about a specific instance of past conduct,
 
 *818
 
 the prank 911 call, and the conduct was relevant to whether he was a truthful person (i.e., whether someone who would intentionally mislead the police is truthful).
 

 The prior school violence
 

 In
 
 Estes v. State,
 
 this court concluded that “a defendant is generally entitled to protection from admission of un-Mirandized incriminating statements made to health care professionals in the context of a court-ordered evaluation or examination.’ ’
 
 [20]
 
 However, for the limited purposes of rebuttal, the State may also rely on the psychiatric examination if the defendant introduced that evaluation, or any portion of it, in support of a defense implicating his or her mental state.
 
 [21]
 

 Pursuant to
 
 Estes,
 
 we conclude that Mitchell was generally entitled to protection from the admission of un-Mirandized statements that he made to Dr. Schmidt during his court-ordered psychiatric examination. However, there are a number of reasons why this protection did not extend to the State’s cross-examination of defense experts Drs. Bittker and Mortillaro about Mitchell’s prior threat against another student. First, Mitchell did not speak with these doctors in the context of a court-ordered evaluation; instead, Mitchell voluntarily requested that they evaluate his mental state. Second, the State did not cross-examine Drs. Bittker and Mortillaro about the content of any conversation or examination that they had with Mitchell; instead, the State inquired about whether their opinions were based upon certain information contained in Mitchell’s background file. Third, and most importantly, Mitchell introduced Drs. Bittker’s and Mortillaro’s evaluations in support of his post-traumatic stress disorder defense. Accordingly, the State was entitled to rely on the evaluation for the limited purpose of rebutting their opinions by inquiring into the information that they utilized in forming their medical opinions about Mitchell’s mental health.
 

 Expert testimony pretrial disclosures required by NRS 174.234(2)
 

 Mitchell contends that the district court abused its discretion when it allowed Dr. Schmidt to testify even though the State failed
 
 *819
 
 to make the disclosures regarding his testimony required by NRS 174.234(2). While the State concedes that it did not make the required disclosures, it contends that it did not act in bad faith and that Mitchell’s substantial rights were not prejudiced. We conclude that Mitchell’s contention lacks merit.
 

 This court reviews a district court’s decision whether to allow an unendorsed witness to testify for abuse of discretion.
 
 [22]
 
 If a defendant fails to object to the State’s nondisclosure of expert testimony, this court applies plain error review and the defendant must prove that his substantial rights were prejudiced.
 
 [23]
 

 NRS 174.234 governs the disclosure of witness lists and information regarding expert testimony in criminal cases. Under NRS 174.234(1), if a defendant is charged with a gross misdemeanor or felony, then at least five days before trial, the prosecution must notify the defendant of the names and addresses of the State’s witnesses. Pursuant to NRS 174.234(2), if the State intends to call an expert witness, then at least 21 days before trial, the State must provide the defense: (a) a brief statement about the subject matter and substance of the expert’s expected testimony, (b) a copy of the expert’s curriculum vitae, and (c) a copy of the expert’s reports. Under NRS 174.234(3), if the prosecution in bad faith fails to satisfy these requirements, then the district court must not allow the expert witness to testify and must also bar the prosecution from introducing any evidence that the expert would have produced.
 

 While the State concedes that it did not properly disclose the information required by NRS 174.234(2) with respect to Dr. Schmidt, we conclude that the district court did not abuse its discretion in admitting the testimony because Mitchell did not argue that the State acted in bad faith, and the record does not indicate any, and Mitchell failed to show any prejudice regarding his substantial rights.
 
 [24]
 
 Accordingly, we conclude that the district court did not abuse its discretion when it allowed Dr. Schmidt to testify under these circumstances.
 

 The State’s questioning of Dr. Schmidt about Mitchell’s psychiatric examination results
 

 Mitchell contends that the district court erred when it allowed Dr. Schmidt to testify at trial that Mitchell was malingering during the psychological evaluation. We disagree.
 

 As mentioned above, in
 
 Estes v. State,
 
 this court concluded that the Fifth and Fourteenth Amendments generally protect defen
 
 *820
 
 dants against the admission of un-Mirandized statements to health care providers during court-ordered psychiatric examinations.
 
 [25]
 
 However, this general protection does not bar the State from introducing rebuttal evidence from health care providers who examine a defendant during a court-ordered examination as long as the evidence (1) is relevant to undermining a defendant’s insanity defense, and (2) does not relate to the defendant’s culpability with respect to the charged crimes.
 
 [26]
 

 We review Mitchell’s argument for plain error because he did not object to Dr. Schmidt’s testimony at trial.
 
 [27]
 
 We conclude that the district court did not err pursuant to
 
 Estes
 
 when it allowed Dr. Schmidt to testify on direct examination that the results of the psychiatric examination indicated that Mitchell malingered in his responses and did not truthfully answer the examination questions. On direct examination, Dr. Schmidt’s testimony complied with
 
 Estes
 
 because the testimony was confined to Mitchell’s mental health and did not concern whether he actually acted in self-defense on the date in question or whether he was guilty of murder. While Dr. Schmidt briefly mentioned the shooting on cross-examination, his testimony did not violate Mitchell’s constitutional rights because Dr. Schmidt was only responding to a question posed by defense counsel. Furthermore, there was no danger that the jury might improperly construe Dr. Schmidt’s findings, or his passing comment about the incident on cross-examination, because this was a bench trial.
 
 [28]
 
 Accordingly, we conclude that this contention lacks merit.
 

 CONCLUSION
 

 When a defendant seeks to avoid criminal responsibility based upon the defense of insanity or battered-spouse syndrome, a district court may order an independent psychiatric examination. By extension, we conclude that a district court may order a psychiatric examination when a defendant claims that he or she reasonably acted in self-defense because of post-traumatic stress disorder. Further, the State may introduce the results of that examination as
 
 *821
 
 long as they are introduced only to rebut the defendant’s post-traumatic stress disorder defense and they do not relate to the defendant’s culpability for the charged crimes. Thus, we conclude that the district court did not violate Mitchell’s Fifth Amendment rights when it ordered him to undergo an independent psychiatric examination and permitted the State to use the results of that examination to rebut his post-traumatic stress disorder defense.
 

 We also reach four additional conclusions. First, the prosecution introduced sufficient evidence for a rational trier of fact to find Mitchell guilty beyond a reasonable doubt. Second, the district court did not err when it allowed the State to question Mitchell and Drs. Bittker and Mortillaro about Mitchell’s prank 911 call and prior school violence threat. Third, the district court did not abuse its discretion when it allowed Dr. Schmidt to testify because Mitchell failed to demonstrate bad faith in the State’s failure to comply with NRS 174.234(2) and Mitchell further failed to demonstrate that his substantial rights were prejudiced. Fourth, the district court did not err when it allowed the State to question Dr. Schmidt about the psychiatric examination results. Accordingly, we affirm Mitchell’s conviction for second-degree murder with the use of a deadly weapon.
 

 Maupin and Saitta, JJ., concur.
 

 [1]
 

 See Ford
 
 v.
 
 State,
 
 102 Nev. 126, 135, 717 P.2d 27, 33 (1986) (“In reviewing the record, we are not persuaded that the district court abused its discretion in not ordering a psychiatric examination of the defendant during trial.”).
 

 [2]
 

 U.S. Const. amend. V;
 
 Murphy
 
 v.
 
 Waterfront Comm’n.,
 
 378 U.S. 52, 57 n.6 (1964).
 

 [3]
 

 122 Nev. 1123, 1145-46, 146 P.3d 1114, 1129 (2006).
 

 [4]
 

 See, e.g., State
 
 v.
 
 Hickson,
 
 630 So. 2d 172, 176 (Fla. 1993) (concluding that if the defendant “decides to rely on the battered-spouse syndrome, and wishes to present the testimony of an expert who has examined her, she must submit to an examination by the state’s expert, whose testimony may be used to rebut her expert’s testimony”);
 
 State v. Briand,
 
 547 A.2d 235, 240 (N.H. 1988) (holding “that a criminal defendant waives her right to resist the State’s
 
 *813
 
 request that she submit to court-ordered psychiatric examination when she (1) submits to psychiatric examination by defense experts; and (2) evinces the intention to rely on that testimony at trial”);
 
 State v. Myers,
 
 570 A.2d 1260, 1266 (N.J. Super. Ct. App. Div. 1990) (holding “that a defendant who invokes the Battered Woman’s Syndrome and intends to introduce expert testimony with regard to it must submit to examination by appropriate experts selected by the State the results of which will be admissible to rebut the defense”);
 
 State
 
 v.
 
 Manning,
 
 598 N.E.2d 25, 28 (Ohio Ct. App. 1991) (concluding that “[w]hen a defendant introduces psychiatric evidence and places her state of mind directly at issue, as here, she can be compelled to submit to a[n] independent examination by a state psychiatrist”);
 
 Bechtel
 
 v.
 
 State,
 
 840 P.2d 1, 9 (Okla. Crim. App. 1992) (“The defendant, who has submitted herself to psychological or psychiatric examination and who intends to use or otherwise rely on testimony resulting from said examination, may be ordered, at the discretion of the trial court, to submit to an examination by the State’s expert witness.”).
 

 [5]
 

 547 A.2d at 237.
 

 [6]
 

 598 N.E.2d at 28.
 

 [7]
 

 630 So. 2d at 176-77.
 

 [8]
 

 U.S. v. Phelps,
 
 955 F.2d 1258, 1263 (9th Cir. 1992) (affirming the district court’s judgment and concluding that the district court did not violate the defendant’s right against self-incrimination when it ordered him to undergo a psychiatric evaluation for purposes of a release hearing from a mental institution);
 
 United States
 
 v.
 
 Byers,
 
 740 F.2d 1104, 1115, 1123 (D.C. Cir. 1984) (affirming the district court’s judgment of conviction and concluding that the defendant’s statements to a court-ordered psychiatrist did not violate his Fifth Amendment privilege against self-incrimination when the defendant raised an insanity defense);
 
 United States v. Cohen,
 
 530 F.2d 43, 47-48 (5th Cir. 1976) (affirming the district court’s judgment of conviction and concluding that the defendant’s Fifth Amendment right against self-incrimination was not violated when the district court ordered him to undergo a psychiatric evaluation when he raised an insanity defense);
 
 United States v. Wade,
 
 489 F.2d 258, 258-59 (9th Cir. 1973) (affirming the district court’s judgment of conviction and concluding that the district court did not abuse its discretion when, pursuant to its own inherent power, it ordered the defendant to undergo a psychiatric evaluation when he raised an insanity defense);
 
 United States v. Handy,
 
 454 F.2d 885, 888 (9th Cir. 1972) (affirming the district court’s judgment of conviction and concluding that the district court did not violate the defendant’s Fifth or Sixth Amendment rights when the district court ordered him to undergo a psychiatric evaluation by two court-appointed psychiatrists when he raised an insanity defense);
 
 United States v. Bohle,
 
 445 F.2d 54, 66-67 (7th Cir. 1971) (concluding that the district court did not abuse its discretion when it compelled the defendant to submit to a government psychiatrist’s evaluation),
 
 overruled on other grounds by United States
 
 v.
 
 Lawson,
 
 653 F.2d 299, 301-03 & n.12 (7th Cir. 1981);
 
 United States
 
 v.
 
 Albright,
 
 388 F.2d 719, 725, 727 (4th Cir. 1968) (affirming the district court’s judgment of conviction and concluding the district court did not violate the defendant’s Fifth Amendment rights when the district court ordered him to undergo a psychiatric examination regarding the issue of insanity).
 

 [9]
 

 See, e.g., Byers,
 
 740 F.2d at 1113 (explaining that “when, as here, a defendant appeals to the nature of that enclave [of the human personality] as the reason why he should not be punished for murder, and introduces psychiatric testimony for that purpose, the state must be able to follow where he has
 
 *815
 
 led”);
 
 Albright,
 
 388 F.2d at 727 (noting that the “defendant introduced the question of his sanity into the proceedings at a time when the only course available to afford the government, in carrying out society’s right to the truth, the opportunity to have another examination of [the] defendant was to recess the trial”).
 

 [10]
 

 Byers,
 
 740 F.2d at 1113 (quoting
 
 Murphy
 
 v.
 
 Waterfront Comm’n.,
 
 378 U.S. 52, 55 (1964));
 
 Pope v. United States,
 
 372 F.2d 710, 720 (1967) (“fundamental fairness” supports allowing government’s independent psychiatric examination of a defendant when the defendant asserts an insanity defense);
 
 Alexander v. United States,
 
 380 F.2d 33, 39 (8th Cir. 1967) (“judicial common sense” would be violated if a defendant could raise an insanity defense but the government could not conduct a psychiatric examination to address it).
 

 [11]
 

 Albright,
 
 388 F.2d at 724.
 

 [12]
 

 See Hill
 
 v.
 
 State,
 
 98 Nev. 295, 297, 647 P.2d 370, 371 (1982) (concluding that the state bears the burden of proving that a defendant’s conduct was not justified or excused in a murder prosecution).
 

 [13]
 

 See Albright,
 
 388 F.2d at 723 (concluding that “a defendant’s right not to incriminate himself is not violated
 
 per se
 
 by requiring him,
 
 in an appropriate case,
 
 to submit to a mental examination”) (second emphasis added).
 

 [14]
 

 Koza v. State,
 
 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319 (1979)).
 

 [15]
 

 McNair
 
 v.
 
 State,
 
 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).
 

 [16]
 

 Blake v. State,
 
 121 Nev. 779, 793, 121 P.3d 567, 576 (2005).
 

 [17]
 

 Id.
 

 [18]
 

 Rowland v. State,
 
 118 Nev. 31, 38, 39 P.3d 114, 118 (2002) (quoting
 
 Libby v. State,
 
 109 Nev. 905, 911, 859 P.2d 1050, 1054 (1993),
 
 vacated on other grounds,
 
 516 U.S. 1037 (1996)).
 

 [19]
 

 Nester v. State of Nevada,
 
 75 Nev. 41, 46, 334 P.2d 524, 526 (1959).
 

 [20]
 

 122 Nev. 1123, 1133, 146 P.3d 1114, 1121 (2006).
 

 [21]
 

 Id. at 1133-34, 146 P.3d at 1121;
 
 accord Estelle v. Smith,
 
 451 U.S. 454, 465 (1981) (concluding via obiter dictum that some federal appellate courts had held that a district court may properly order a defendant to undergo a compulsory psychiatric examination “[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, [because] his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case”).
 

 [22]
 

 Mulder v. State,
 
 116 Nev. 1, 12-13, 992 P.2d 845, 852 (2000);
 
 Dolby
 
 v.
 
 State,
 
 81 Nev. 517, 519, 406 P.2d 916, 917 (1965).
 

 [23]
 

 Grey v. State,
 
 124 Nev. 110, 120, 178 P.3d 154, 161-62 (2008).
 

 [24]
 

 Mitchell acknowledges that he “had ample opportunities to examine the State’s file and had the opportunity to perform a pre-trial interview with Dr. Schmidt” and further acknowledges that he “was aware of Dr. Schmidt’s
 
 *820
 
 findings and what he would testify to prior to trial.” Additionally, the record indicates that the defense was not unfairly surprised as Dr. Schmidt provided defense counsel a copy of his test data and the computer scoring before testifying.
 

 [25]
 

 122 Nev. at 1133, 146 P.3d at 1121.
 

 [26]
 

 Id.
 
 at 1134, 146 P.3d at 1122.
 

 [27]
 

 Blake
 
 v.
 
 State,
 
 121 Nev. 779, 793, 121 P.3d 567, 576 (2005).
 

 [28]
 

 Cf. Randell v. State,
 
 109 Nev. 5, 7-8, 846 P.2d 278, 280 (1993) (“ ‘[J]udges spend much of their professional lives separating the wheat from the chaff and have extensive experience in sentencing, along with the legal training necessary to determine an appropriate sentence.’ ” (quoting
 
 People v. Mockel,
 
 276 Cal. Rptr. 559, 563 (Ct. App. 1990))).