130 Nev., Advance Opinion 29

IN THE SUPREME COURT OF THE STATE OF NEVADA

DARREN GABRIEL LACHANCE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62129

**FILED**

APR 03 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of domestic battery by strangulation, domestic battery causing substantial bodily harm, possession of a controlled substance for the purpose of sale, possession of a controlled substance, false imprisonment, and unlawful taking of a motor vehicle. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Affirmed in part and reversed in part.*

Richard F. Cornell, Reno,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Richard A. Gammick, District Attorney, and Terrence P. McCarthy, Deputy District Attorney, Washoe County,
for Respondent.

_____

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

8/29/14: Corrected per letter to publishers. CJ

14-10531

## OPINION

By the Court, CHERRY, J.:

In this opinion, we address whether the charge of possession of a controlled substance is a lesser-included offense of possession of a controlled substance for the purpose of sale. Under the Double Jeopardy Clause, a criminal defendant may not be punished multiple times for the same offense unless the Legislature has clearly authorized the punishments. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Because we conclude that possession of a controlled substance is a lesser-included offense of possession of a controlled substance for the purpose of sale, we conclude that appellant may not be punished for both crimes. To remedy the double-jeopardy violation, we look to the range of punishment for the principal offenses and reverse the conviction with the lesser penalty. Based on appellant's criminal history, we conclude that simple possession was the less severely punishable offense, and we, accordingly, reverse that conviction. However, we affirm the remainder of the judgment of conviction, including the adjudication of appellant as a habitual criminal.

## FACTS

After Darren LaChance returned home from a three-day gambling binge, he and his girlfriend, Starleen Lane, got into an argument in the early hours of the morning. Their roommate, Conrad Coultre (CJ), also became involved in the argument later that morning. Lane testified that after LaChance and CJ started arguing, LaChance hit her on the right side of her forehead with a flashlight. Then, after CJ left for work, LaChance grabbed her by the arm and flung her into the bedroom while yelling, belittling, and threatening to kill and maim her. He began to punch and slap her face and ear, threw her on the bed, and got on top of

her with his knee on her chest and his hand around the lower part of her neck. LaChance used his body weight to put pressure on her chest and lower neck. Lane had difficulty breathing and saw stars because of the pressure and because of her fear and anxiety. After Lane started to scream, LaChance covered her mouth with his hand.

Lane further stated that LaChance repeatedly slapped her ear, and it "just went blank." She could no longer hear and became immediately nauseous. Lane was able to roll into a fetal position while he kicked her in the shins and tailbone and hit her with the flashlight. When she tried to get up, LaChance stomped on her feet.

According to Lane, LaChance eventually left the room, and Lane opened the patio door, jumped off the balcony, and fled with LaChance chasing her. LaChance caught up to her but, after a neighbor yelled that she was calling the cops, LaChance fled to Lane's car and drove off without her permission. The neighbor testified that she saw LaChance beating Lane, and after she yelled at him, he ran off. The neighbor then called the police. Lane waited for the police to arrive, and she made a report before going to the hospital.

At the hospital, Lane was treated for multiple contusions on her face, back, legs, feet, and ear. She suffered pain in that ear and tenderness in her neck, abdomen, pelvis, and extremities. Lane stated that she was immobile for a few days afterward. She has permanent shin splints and can no longer run. Due to her tailbone injuries, she is unable to sit for long periods of time. Lane testified that she suffers from hearing loss and ongoing pain. But, due to a lack of medical insurance, she does not go to the doctor for these problems.

Lane testified that following the assault, she received a number of intimidating text messages from LaChance, indicating that she needed to make the case go away. Lane decided not to press charges out of fear.

About a week after the incident, Lane met with LaChance at a Motel 6. She indicated that the detectives knew of their meeting as her phones were tapped. Lane stayed with LaChance at the motel for two nights.

On the second morning, Lane stated that she left the motel room to smoke a cigarette, rounded the corner, and ran into a group of police officers looking for LaChance. They had established a perimeter when Lane happened upon them. Lane granted consent to the police to enter and search the motel room. Detective Curtis English testified that LaChance did not immediately exit the motel room and was alone in the room for approximately 10 minutes.

When police finally searched the room, they found marijuana floating in the toilet and plastic bags. Police obtained a warrant to search LaChance's duffel bags for controlled substances as the result of a canine alert. Detective English testified that they found approximately 4.6 pounds of marijuana and several scales.

LaChance was subsequently charged by way of information with domestic battery by strangulation, domestic battery causing substantial bodily harm, felony possession of a controlled substance for the purpose of sale (NRS 453.337), felony possession of a controlled substance (NRS 453.336), false imprisonment, and unlawful taking of a motor vehicle. He pleaded not guilty to all counts.

The jury ultimately found LaChance guilty on all counts. The State subsequently gave notice on the record of its intent to pursue habitual criminal enhancements due to LaChance's five prior felony convictions. When asked what the State needed to do to meet the statutory requirements to provide notice, defense counsel and the district court agreed that written notice would be sufficient. A notice of habitual criminal enhancement was filed.

In discussing the sentence, the district court noted LaChance's young age, the victim impact statements, the severity of the beating, and the five prior felony convictions. The district court determined that the habitual criminal enhancement applied and adjudicated LaChance as a habitual criminal on two of the principal offenses: domestic battery causing substantial bodily harm and possession of a controlled substance. The district court then sentenced LaChance to 24 to 60 months for domestic battery by strangulation, 10 years to life for domestic battery causing substantial bodily harm, 72 to 180 months for felony possession of a controlled substance for the purpose of sale, 10 years to life for felony possession of a controlled substance, 12 months for false imprisonment, and 12 months for unlawful taking of a motor vehicle. A judgment of conviction was entered. LaChance appealed.

## DISCUSSION

### Sufficiency of the evidence

We first address LaChance's challenge to the sufficiency of the evidence to support the convictions for domestic battery by strangulation and domestic battery causing substantial bodily harm. Under a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the prosecution and determines whether "any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (emphasis and internal quotation marks omitted). The jury is tasked with assessing the weight of the evidence and the witnesses' credibility, *id.*; *Rose v. State*, 123 Nev. 194, 202-03, 163 P.3d 408, 414 (2007), and may rely on both direct and circumstantial evidence in returning its verdict, *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980).

### Domestic battery by strangulation

LaChance contends that there was insufficient evidence of strangulation, and therefore, he could not be convicted of felony battery under NRS 200.485(2). He argues that the strangulation element was only supported by speculation and ambiguous statements and that any difficulty in breathing resulted from Lane's anxiety.

NRS 200.481(1)(a) defines battery as "any willful and unlawful use of force or violence upon the person of another." *See also* NRS 33.018 (defining acts of domestic violence). When the battery is committed by strangulation, the perpetrator is guilty of a felony rather than a misdemeanor. NRS 200.485(2). The Legislature defined strangulation as "intentionally impeding the normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person in a manner that creates a risk of death or substantial bodily harm." NRS 200.481(1)(h).

In reviewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that LaChance strangled Lane. The State presented evidence that LaChance placed his knee on Lane's chest and his

hands on her clavicle/lower part of her neck and then put pressure on the area, impeding her breathing to the point that her vision was impaired. Depriving Lane of oxygen to the point where she lost vision supports a finding that LaChance applied pressure to Lane's throat or neck in a manner that created a risk of death or substantial bodily harm. Accordingly, we affirm the conviction for domestic battery by strangulation.

### Domestic battery causing substantial bodily harm

LaChance also challenges the sufficiency of the evidence supporting the substantial-bodily-harm element of the domestic-battery-causing-substantial-bodily-harm conviction. He also contends that where the substantial-bodily-harm element is based on prolonged pain, the pain must also be substantial, and here it was not.[1]

---

[1]LaChance also avers that the *Collins v. State*, 125 Nev. 60, 203 P.3d 90 (2009), definition of "prolonged physical pain" is inadequate and that this court should adopt the "prolonged . . . pain" standard elucidated in the dissent of *State v. King*, 827 N.E.2d 398, 402 (Ohio Ct. App. 2005) (Rocco, J., dissenting). Because LaChance's counsel acquiesced to the use of the definition found in *Collins* during trial, appellate consideration of this issue is limited to constitutional or plain error. *Saletta v. State*, 127 Nev. ___, ___, 254 P.3d 111, 114 (2011) (noting that failure to object during trial generally precludes appellate consideration of an issue); *Somee v. State*, 124 Nev. 434, 443, 187 P.3d 152, 159 (2008) ("[T]his court has the discretion to review constitutional or plain error."). Because there is no alleged constitutional component to this argument, the error here must be plain. "An error is plain if the error is so unmistakable that it reveals itself by a casual inspection of the record." *Saletta*, 127 Nev. at ___, 254 P.3d at 114 (internal quotation omitted). The error must also be clear under current Nevada law. *Id.* Accordingly, plain error cannot exist here because such a finding would be inconsistent with *Collins*, the controlling Nevada authority.

Where a battery results in substantial bodily harm, the battery becomes a felony. *See* NRS 200.485(2); NRS 200.481(2)(b). NRS 0.060 defines substantial bodily harm as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ; or . . . [p]rolonged physical pain." We have stated that "the phrase 'prolonged physical pain' must necessarily encompass some physical suffering or injury that lasts longer than the pain immediately resulting from the wrongful act." *Collins v. State*, 125 Nev. 60, 64, 203 P.3d 90, 92-93 (2009). "In a battery, for example, the wrongdoer would not be liable for 'prolonged physical pain' for the touching itself. However, the wrongdoer would be liable for any lasting physical pain resulting from the touching." *Id.* at 64 n.3, 203 P.3d at 93 n.3.

Reviewing the evidence in the light most favorable to the prosecution, we conclude that the State presented sufficient evidence to establish that Lane suffered prolonged physical pain. Lane was treated at the hospital for hemorrhaging of the ear and multiple contusions and welts. She testified that she was immobile for a few days afterward and that her injuries have resulted in permanent shin splints, which prevent her from running. The injuries to her tailbone hinder her ability to sit for long periods. She also has hearing loss as a result of the injuries suffered from the assault. We conclude that Lane's testimony and the medical records support a finding that Lane suffered "some physical suffering or injury that lasts longer than the pain immediately resulting from the wrongful act." *Collins*, 125 Nev. at 64, 203 P.3d at 92-93. Accordingly,

LaChance's conviction for domestic battery causing substantial bodily harm is supported by sufficient evidence.

*Lesser-included offenses*

LaChance argues that the convictions and sentences for possession of a controlled substance for the purpose of sale (NRS 453.337) and the lesser-included offense of simple possession (NRS 453.336) based on the same controlled substance violates the Double Jeopardy Clause.[2] The State argues that because NRS 453.336 includes a weight element and NRS 453.337 includes an intent element, simple possession under NRS 453.336 is not a lesser-included offense of possession for sale under NRS 453.337.[3]

---

[2]LaChance cites to *Fairman v. State*, for the proposition that possession of a controlled substance is a lesser-included offense of possession of a controlled substance for the purpose of sale. 83 Nev. 137, 141, 425 P.2d 342, 344-45 (1967), *abrogated on other grounds by Bigpond v. State*, 128 Nev. ___, ___, 270 P.3d 1244, 1249 (2012). However, the *Fairman* court dealt with a situation where the defendant was found guilty of two crimes under the same statute and determined that only one conviction may arise out of a single statute. 83 Nev. at 141, 425 P.2d at 344-45. The statutory scheme has since changed, with possession for sale and simple possession separated into different statutes.

[3]The State asserts that because LaChance never gave the district court the opportunity to address the double jeopardy issue and because double jeopardy protections are waivable, this court should decline to consider the challenge. While double jeopardy challenges may be waived under certain conditions, *United States v. Broce*, 488 U.S. 563, 568 (1989), waiver of a fundamental constitutional right must be knowing and intentional. *Raquepaw v. State*, 108 Nev. 1020, 1023, 843 P.2d 364, 366-67 (1992), *overruled on other grounds by DeRosa v. First Judicial Dist. Court*, 115 Nev. 225, 234, 985 P.2d 157, 163 (1999), *overruled on other grounds by City of Las Vegas v. Walsh*, 121 Nev. 899, 906, 124 P.3d 203, 208 (2005), *overruled on other grounds by City of Reno v. Howard*, 130

*continued on next page...*

"Although failure to object at trial generally precludes appellate review, this court has the discretion to review constitutional or plain error." *Somee v. State*, 124 Nev. 434, 443, 187 P.3d 152, 159 (2008); *see also United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008) (reviewing unobjected-to double jeopardy claims under a plain error standard). Plain error exists when the error was clear and it affects a defendant's substantial rights. *Mclellan v. State*, 124 Nev. 263, 269, 182 P.3d 106, 110 (2008).

"The Double Jeopardy Clause protects against . . . multiple punishments for the same offense." *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1278 (2012). The Supreme Court of the United States has clarified that the Double Jeopardy Clause does not prohibit multiple punishments if the legislature clearly authorizes them. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). If legislative intent is unclear, this court utilizes the *Blockburger v. United States*, 284 U.S. 299, 304 (1932), test to determine the permissibility of multiple punishments for the same offense. *Jackson*, 128 Nev. at ___, 291 P.3d at 1278. There, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a[n additional] fact which the other does not." *Blockburger*, 284 U.S. at 304. The *Blockburger* test asks "whether the offense in question cannot be committed without committing the lesser offense." *Estes v. State*, 122 Nev. 1123, 1143, 146 P.3d 1114, 1127 (2006)

---

*...continued*
Nev. ___, ___, 318 P.3d 1063, 1067 (2014). An intentional relinquishment has not been demonstrated here.

(internal quotation omitted). A person cannot be convicted of both a greater- and lesser-included offense. *Id.*

The statute proscribing possession with an intent to sell provides that "it is unlawful for a person to possess for the purpose of sale . . . any controlled substance classified in schedule I or II." NRS 453.337(1).[4] The possession statute simply provides that "[a] person shall not knowingly or intentionally possess a controlled substance." NRS 453.336(1).[5]

The elements of simple possession are included in possession for sale—if one is guilty of possession for sale, he or she will necessarily be guilty of simple possession. *See* NRS 453.337(1); NRS 453.336(1); *see also Lisby v. State*, 82 Nev. 183, 187, 414 P.2d 592, 594-95 (1966) ("'No sale of narcotics is possible without possession, actual or constructive.'" (quoting *People v. Rosales*, 38 Cal. Rptr. 329, 331 (Ct. App. 1964)). The State relies on the additional weight element under NRS 453.336(4)[6] to distinguish

---

[4]NRS 453.337(1), unlawful possession for sale, provides that "[e]xcept as otherwise authorized by the provisions of NRS 453.011 to 453.552, inclusive, it is unlawful for a person to possess for the purpose of sale . . . any controlled substance classified in schedule I or II."

[5]NRS 453.336(1), unlawful possession not for purpose of sale, provides that "a person shall not knowingly or intentionally possess a controlled substance."

[6]NRS 453.336 provides, in pertinent part, that:

> 4. Unless a greater penalty is provided pursuant to NRS 212.160, a person who is convicted of the possession of 1 ounce or less of marijuana:
>
> (a) For the first offense, is guilty of a misdemeanor and shall be:

*continued on next page...*

the offenses. However, the weight element under NRS 453.336 is a factor to be considered in sentencing and is not an element of the offense for purposes of *Blockburger*. The weight does not affect guilt; it only determines the sentence for simple possession of marijuana. And because all of the elements of simple possession under NRS 453.336 are subsumed within the elements of possession for the purpose of sale under NRS 453.337, it is irrelevant for purposes of the double-jeopardy analysis that possession for the purpose of sale has an additional intent element that is not an element of simple possession. *See Rosas v. State*, 122 Nev. 1258,

---

*...continued*

      (1) Punished by a fine of not more than $600; or

      (2) Examined by an approved facility for the treatment of abuse of drugs to determine whether the person is a drug addict and is likely to be rehabilitated through treatment and, if the examination reveals that the person is a drug addict and is likely to be rehabilitated through treatment, assigned to a program of treatment and rehabilitation pursuant to NRS 453.580.

    (b) For the second offense, is guilty of a misdemeanor and shall be:

      (1) Punished by a fine of not more than $1,000; or

      (2) Assigned to a program of treatment and rehabilitation pursuant to NRS 453.580.

    (c) For the third offense, is guilty of a gross misdemeanor and shall be punished as provided in NRS 193.140.

    (d) For a fourth or subsequent offense, is guilty of a category E felony and shall be punished as provided in NRS 193.130.

1263, 147 P.3d 1101, 1105 (2006) ("A lesser offense is included in a greater offense when all of the elements of the lesser offense are included in the elements of the greater offense." (internal quotation omitted)). Accordingly, the convictions for both violate double jeopardy.

The parties disagree as to which conviction should be vacated to remedy the double-jeopardy violation. The State argues that *Meador v. State*, 101 Nev. 765, 771, 711 P.2d 852, 856 (1985), *disapproved of on other grounds by Talancon v. State*, 102 Nev. 294, 301 & n.3, 721 P.2d 764, 768 n.3, 769 (1986), makes it clear that the crime with the more lenient sentence should be vacated. Applying that rule to this case, the State argues that the possession-for-sale conviction should be vacated because it carries the lesser sentence as a result of the district court adjudicating LaChance as a habitual criminal on simple possession and increasing the sentence for that offense accordingly. LaChance contends that we should look at the maximum punishment for the principal offense, ignoring any habitual criminal adjudication, to determine which is the lesser offense.

We ordinarily look to the range of punishment to determine which offense is the lesser-included offense. *See Brown v. State*, 113 Nev. 275, 287, 934 P.2d 235, 243 (1997) (vacating the conviction for child abuse and maintaining the convictions for sexual assault based on the conclusion that "while the child abuse count required proof of an extra element, i.e., that the sexual assault caused physical pain and mental suffering, the extra element did not transform the child abuse charge into the greater crime at issue"); *Meador*, 101 Nev. at 771, 711 P.2d at 856 (relying on a California case for the proposition that if a defendant is "convicted of two offenses which are actually one, [the] conviction of [the] less severely punishable offense should be set aside" (citation omitted)). Under that

approach, simple possession would be the lesser offense. *Compare* NRS 453.336(2)-(4) (penalties for simple possession of controlled substance), *with* NRS 453.337(2) (penalties for possession for sale of schedule I and II controlled substance), *and* NRS 453.338(2) (penalties for possession for sale of schedule III, IV, or V controlled substance).

The issue is only complicated in this case because the district court adjudicated LaChance as a habitual criminal on the simple-possession offense but not the possession-for-sale offense. This had the effect of increasing both the category and range of punishment for the simple-possession offense, *see* NRS 207.010, making the possession-for-sale offense the less severely punishable offense. Because the double-jeopardy analysis is based solely on the elements of the principal offenses, we conclude that the district court should look to the range of punishment for the principal offenses in deciding which conviction to vacate.

Based on LaChance's criminal history, the charge for possession of a controlled substance is a category D felony, NRS 453.336(2)(b), with a sentencing range of 1 to 4 years, NRS 193.130(2)(d). However, his charge for possession of a controlled substance for the purpose of sale is a category B felony, with a sentencing range of 3 to 15 years. NRS 453.337(2)(c). Looking solely at the principal offenses, simple possession is the less severely punishable offense. Accordingly, we reverse the conviction for felony possession of a controlled substance (count II), the lesser-included offense in this instance.

*Notice of intent to seek habitual criminal adjudication*

LaChance argues that the district court committed plain error and violated his constitutional rights to a fair trial and due process in allowing habitual offender adjudication without an information or an arraignment indicating that the State was seeking habitual offender

treatment. He avers that while his counsel did not object to a notice being filed, this notice could not have replaced the required charging document. The State points out that adequate actual notice of the habitual criminal enhancement was provided and that no arraignment was necessary as being a habitual criminal is an allegation of a status, not a criminal charge.

LaChance's failure to object to this issue below results in this court conducting plain error review of this issue. *Saletta v. State*, 127 Nev. ___, ___, 254 P.3d 111, 114 (2011) (noting that failure to object during trial generally precludes appellate consideration of an issue). Plain error review requires this court to "examine whether there was error, whether the error was plain or clear, and whether the error affected the defendant's substantial rights." *Id.* (internal quotation omitted).

Even if it was error to file a notice rather than filing a separate count or amending the information to include the habitual criminal allegation, NRS 207.016(2), LaChance cannot demonstrate that his substantial rights were affected for two reasons. First, he agreed to the procedure used in this case. *See Pearson v. Pearson*, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994) (holding plain error does not exist when the complaining party contributed to the error because a defendant "will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit" (citation and internal quotation omitted)).

Second, the clear purpose of NRS 207.010(2) is to ensure that the defendant has notice that the State will request habitual criminal adjudication. *See* NRS 207.016(2) (allowing the habitual criminal to be added right before trial or at any time before sentence is imposed, so long

as there is sufficient time between addition and sentence). Here, he had written notice. Moreover, habitual criminal adjudication is not an offense, it is a status determination, *Schneider v. State*, 97 Nev. 573, 575, 635 P.2d 304, 305 (1981), that is not subject to jury determination, *O'Neill v. State*, 123 Nev. 9, 15, 153 P.3d 38, 42 (2007). So, there is no need for a preliminary hearing or arraignment. *See* NRS 174.015; *Hanley v. Zenoff*, 81 Nev. 9, 12, 398 P.2d 241, 242 (1965) (requiring a new arraignment for material changes to the charges). Since LaChance does not have those rights as to habitual criminal allegation, the error could not have substantially affected those rights. Accordingly, plain error was not demonstrated.

*Adjudicating LaChance as a habitual criminal*

Adjudication of a defendant as a habitual criminal is "subject *to the broadest kind of judicial discretion.*" *Tanksley v. State*, 113 Nev. 997, 1004, 946 P.2d 148, 152 (1997) (internal quotation omitted). In determining if a finding of habitual criminal is proper, "this court looks to the record as a whole to determine whether the sentencing court actually exercised its discretion." *O'Neill*, 123 Nev. at 16, 153 P.3d at 43 (internal citation omitted). A sentencing court meets its obligations so long as it "was not operating under a misconception of the law regarding the discretionary nature of a habitual criminal adjudication." *Id.* (internal citation omitted). Moreover, in considering the enhancement, the "court may consider facts such as a defendant's criminal history, mitigation evidence, victim impact statements and the like." *Id.*

The court may "dismiss a count under NRS 207.010 when the prior offenses are stale or trivial, or in other circumstances where an adjudication of habitual criminality would not serve the purposes of the

statute or the interests of justice." *French v. State*, 98 Nev. 235, 237, 645 P.2d 440, 441 (1982). The "habitual criminality statute exists to enable the criminal justice system to deal determinedly with career criminals who pose a serious threat to public safety." *Sessions v. State*, 106 Nev. 186, 191, 789 P.2d 1242, 1245 (1990).

LaChance asserts that he has a constitutionally protected liberty interest under the due process clause of the Fourteenth Amendment to have the State adhere to NRS 207.010. *See Walker v. Deeds*, 50 F.3d 670, 673 (9th Cir. 1995) ("Nevada's law requiring a court to review and make particularized findings that it is 'just and proper' for a defendant to be adjudged a habitual offender also creates a constitutionally protected liberty interest in a sentencing procedure."). Concerning the requisite number of previous felonies for the habitual criminal enhancement, LaChance argues that this court should adopt the majority rule that multiple punishments entered during the same time period are considered only one felony. He then points out that because of the time periods for the felonies, he only was imprisoned twice.

The State argues that the habitual criminal enhancement is not concerned with the number of times the individual passes through the prison system but is concerned with the number of convictions. The State avers that this court should recognize the statute as written by the Legislature, which makes no reference to the number of prison sentences, and decline to usurp the legislative function.[7]

---

[7]LaChance argues for the first time in the reply brief that NRS 207.010(1) is ambiguous. Because the Nevada Rules of Appellate Procedure do not allow litigants to raise new issues for the first time in a reply brief, we decline to consider this argument. NRAP 28(c).

The governing statute, NRS 207.010(1)(b), states that a person who has been convicted of at least three felonies is a habitual criminal and shall be punished for a category A felony.[8] However, "[t]he trial judge may, at his or her discretion, dismiss a [habitual criminal] count[,] . . . which is included in any indictment or information." NRS 207.010(2).

The determination of the number of prior felonies for the habitual criminal enhancement is based on the statutory scheme created by the legislature, not on extrajurisdictional caselaw. *See* Cynthia L. Sletto, Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes*, 7 A.L.R. 5th 263 (1992) (revealing a split of authority on the subject of whether "prior offenses and convictions must have occurred in chronological sequence, with each subsequent offense having been committed after conviction of the immediately preceding offense . . . the resolution of which often depends on the language of the particular statute under consideration and the court's opinion of what purpose such a statute is intended to serve"); 24 C.J.S. *Criminal Law* § 2316 (2006) (stating that the circumstantial application of enhancements is statutorily based).

---

[8]NRS 207.010(1)(a) provides that a person convicted of

> [a]ny felony, who has previously been two times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony is a habitual criminal and shall be punished for a category B felony by imprisonment in the state prison for a minimum term of not less than 5 years and a maximum term of not more than 20 years.

Based on the language and intent of NRS 207.010, we have held "that where two or more convictions grow out of the same act, transaction or occurrence, and are prosecuted in the same indictment or information, those several convictions may be utilized only as a single 'prior conviction' for purposes of applying the habitual criminal statute." *Rezin v. State*, 95 Nev. 461, 462, 596 P.2d 226, 227 (1979); *see also Halbower v. State*, 96 Nev. 210, 211-12, 606 P.2d 536, 537 (1980) (same). This rule "is consistent with the policy and purpose of the recidivist statute. By enacting the habitual criminal statute, the legislature sought to discourage repeat offenders and to afford them an opportunity to reform." *Rezin*, 95 Nev. at 462-63, 596 P.2d at 227.

LaChance has given us no reason to depart from our prior interpretation of the statutory scheme and impose additional time-period constraints on prior convictions that are not provided for in the statute. NRS 207.010 allows for reform between felonious acts. This time for reform does not hinge on arrests and to so limit reform to time periods between prison terms would hobble the district court's discretion "to deal determinedly with career criminals who pose a serious threat to public safety." *Sessions*, 106 Nev. at 191, 789 P.2d at 1245. Accordingly, we decline to impose additional constraints on the district court's discretionary determination of whether habitual criminal adjudication is warranted.

LaChance had been convicted of five prior felonies—(1) a November 14, 2002, conviction for felony battery causing substantial bodily harm for an event that took place on May 13, 2001; (2) a November 14, 2002, felony conviction for possession of 4 grams or more but less than 14 grams of a schedule I controlled substance for an event that took place

on May 29, 2002; (3) a February 27, 2003, felony conviction for possession of a stolen motor vehicle for an event that took place on October 9, 2002; (4) an April 3, 2007, felony conviction for trafficking in a controlled substance for an event that took place on October 3, 2006; and (5) an August 23, 2012, felony conviction for possession of a controlled substance for an event that took place on July 12, 2007. The record thus establishes that LaChance has at least three separate and distinct prior felony convictions for purposes of applying the habitual criminal statute. Our analysis of Nevada's law on habitual offender enhancement leads us to conclude that the district court was well within its discretion in sentencing LaChance as a habitual offender.

Accordingly, we reverse the conviction for felony possession of a controlled substance (count II), the lesser-included offense in this instance, and otherwise affirm the judgment of conviction.

_____, J.
Cherry

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre