*1286
 
 OPINION
 

 Per Curiam:
 

 Between October and December 1994, a series of property crimes was committed in the Fernley, Nevada area. Based largely on circumstantial evidence and the testimony of the State’s two key witnesses, Stanley Brown and Maurice Marineau, appellant Edward Robert Hennie was ultimately charged with committing the crimes.
 

 During trial, Hennie asserted his innocence and claimed that he had been framed for the various crimes by his roommates, Brown and Marineau. At the conclusion of trial, the jury found Hennie guilty of burglary, grand larceny, felony theft from a vending machine, and attempted theft. At his sentencing hearing several months after the conclusion of his trial, Hennie learned that Marineau and Brown had been involved in a criminal conspiracy to murder Marineau’s ex-wife during November 1994. Additionally, Hennie learned that Brown, in contrast to his trial testimony, was substantially indebted to Marineau in the amount of $2500.00. Hennie filed a motion for a new trial based on this newly discovered evidence, but the district court denied Hennie’s motion on the ground that such evidence was cumulative.
 

 Hennie now appeals, arguing that the district court erred in denying his motion for a new trial based on newly discovered evidence. We agree. Accordingly, we reverse Hennie’s conviction and remand for a new trial.
 
 [1]
 

 FACTS
 

 During the fall and winter of 1994, several property crimes
 
 *1287
 
 were committed in the Fernley, Nevada area. On October 24, 1994, Tucker’s Pharmacy was burglarized and various prescription and non-prescription drugs, exceeding $250.00 in value, were stolen. On December 11, 1994, a Nevada Bell telephone booth, containing in excess of $250.00 in its coin box, was stolen from outside JR’s Ranch House. Additionally, in the early morning hours of December 19, 1994, Mission Linen was burglarized and several vending machines in the employee break room were vandalized and damaged. The amount of money and goods stolen during the Mission Linen burglary exceeded $250.00.
 

 Daryl Revels, Mission Linen’s plant engineer, discovered the break-in when he arrived for work at approximately 3:00 a.m. and immediately contacted the Lyon County Sheriff’s Department. Revels informed Deputy Brett Palmer that when he arrived for work, he saw an orange-colored van in the parking lot with its headlights turned off. The van proceeded slowly around the south side of the building and then departed the parking lot in a southerly direction on Lyon Drive.
 

 Deputy Palmer noted that Revel’s description of this van was similar to another van involved in an unrelated matter. Based on this similarity, Deputy Palmer proceeded to the Marineau residence where he believed the van would be located; upon arriving, Deputy Palmer observed an orange-colored van parked in front of Marineau’s residence and determined that it matched the description of the van that Revels saw in the Mission Linen parking lot.
 

 The following morning, Deputy Palmer and Sergeant Thompson returned to Marineau’s residence to compare the suspect van with pieces of a vehicle’s fog light cover and various metal brackets that were found in Mission Linen’s parking lot. Deputy Palmer noticed that pieces of the suspect van’s fog light cover and metal brackets were missing. After determining that the items found at the crime scene matched the areas on the suspect van where those items would normally be attached, Deputy Palmer impounded the vehicle.
 

 The van belonged to Brown; Brown and Hennie each rented rooms from Marineau. Hennie was currently employed at Mission Linen, and both Brown and Marineau had previously worked for that business. When Brown learned later that day that the police had impounded his van, he immediately went to the Lyon County Sheriff’s substation to meet with Sgt. Thompson. During questioning, Brown denied any involvement in the Mission Linen burglary and informed Sgt. Thompson that Hennie had borrowed his van the previous evening during the time of the Mission Linen burglary.
 

 On December 21, 1994, while Marineau and Brown were cleaning Marineau’s garage, they found a coin box which Brown
 
 *1288
 
 immediately recognized as a coin box from a pay telephone booth. Marineau promptly called the Lyon County Sheriff’s office, and a sheriff’s deputy informed him that he would retrieve the coin box the following morning. Marineau then placed the coin box on top of some barrels outside of his garage. Later that evening, Hennie went to the Marineau residence, retrieved his personal belongings, and informed Marineau that he was moving to Reno.
 

 The following morning, when sheriff’s deputies arrived at the Marineau residence to retrieve the coin box, it was missing. Marineau, Brown, and the officers began a search and Marineau eventually found the coin box inside his utility trailer underneath some garbage. The serial number on the coin box matched the serial number of the telephone booth that had been stolen from JR’s Ranch House.
 

 On December 24, 1994, a Mission Linen employee found a telephone booth, covered with a white mattress pad in the melting snow, near the south fence of the Mission Linen property. The serial number of this telephone booth matched both the serial number of the telephone booth that had been stolen from JR’s Ranch House and the coin box found in Marineau’s garage.
 

 On February 23, 1995, Hennie was charged with numerous felony offenses including burglary, grand larceny, and theft. During Hennie’s trial, the State called Brown and Marineau as its key witnesses. Brown testified that on the morning of the Mission Linen burglary, at approximately 12:30 a.m., he allowed Hennie to borrow his van. After Hennie departed, Brown worked in his garage until approximately 2:30 a.m., and then retired to bed. Brown concluded his testimony by adding that he was finally “turning his life around” and had a good job; thus he would not risk losing everything by lying or engaging in criminal activity.
 

 Marineau testified that Hennie had given him a pair of boots with treads that were similar to the tracks found outside Mission Linen, and that Hennie had asked him to make a key for a telephone booth coin box. In presenting himself as a neutral and unbiased witness, Marineau concluded his testimony by reiterating that both Hennie and Brown were merely his tenants, and that while he had known Brown for quite some time, he and Brown were no more than acquaintances.
 

 At the conclusion of trial, the jury convicted Hennie of one count each of grand larceny, burglary, felony theft from a vending machine, and attempted felony theft of a vending machine. On December 4, 1995, while appearing in court for sentencing, Hennie learned for the first time that during November 1994, Marineau had paid Brown $600.00 to hire someone to murder Marineau’s ex-wife, and that both Marineau and Brown had been charged with conspiracy to commit murder. Brown used the
 
 *1289
 
 $600.00 from Marineau to purchase the orange Chevrolet van that was used in the Mission Linen burglary. Hennie also learned that contrary to Brown’s trial testimony, Brown was substantially indebted to Marineau in the amount of $2500.00.
 

 Based on the newly discovered evidence that Marineau and Brown had been engaged in a conspiracy to commit murder, and of Brown’s indebtedness to Marineau, Hennie filed a motion for a new trial pursuant to NRS 176.515. The district court denied Hennie’s motion on the ground that this newly discovered evidence was cumulative because Hennie had extensively attacked Brown’s credibility during trial. Following the denial of Hennie’s motion for a new trial, the district court sentenced Hennie to fourteen years in the Nevada State Prison. Hennie now appeals from the district court’s denial of his motion for a new trial.
 

 DISCUSSION
 

 At trial, Hennie maintained his innocence and advanced a theory of defense that he had been framed for the crimes by Brown and Marineau. On appeal, Hennie argues that the district court abused its discretion in denying his motion for a new trial based on the newly discovered evidence that Brown and Marineau had been involved in a conspiracy to murder Marineau’s ex-wife, and that Brown had been substantially indebted to Marineau and thus may have had a financial motive for committing the crimes. Hennie argues that because he was convicted largely on the basis of Brown’s and Marineau’s uncorroborated testimony, the newly discovered evidence of their conspiracy to commit murder, and Brown’s indebtedness to Marineau, would increase the probability of a different result on retrial. We agree.
 

 Pursuant to NRS 176.515, the district court may grant a new trial based on newly discovered evidence if the motion is made within two years after the verdict or finding of guilt.
 
 [2]
 
 The grant or denial of a new trial on the ground of newly discovered evidence is within the discretion of the trial court. Sanborn v. State, 107 Nev. 399, 406, 812 P.2d 1279, 1284 (1991). In Callier v. Warden, 111 Nev. 976, 901 P.2d 619 (1995), we reiterated the general standard for a new trial based on newly discovered evidence as follows:
 

 
 *1290
 
 (1) the evidence must be newly discovered; (2) it must be material to the defense; (3) it could not have been discovered and produced for trial even with the exercise of reasonable diligence; (4) it must not be cumulative; (5) it must indicate that a different result is probable on retrial; (6) it must not simply be an attempt to contradict or discredit a former witness; and (7) it must be the best evidence the case admits.
 

 Id.
 
 at 988, 901 P.2d at 626. Further, newly discovered impeachment evidence may be sufficient to justify granting a new trial if the witness impeached is so important that impeachment would necessitate a different verdict. King v. State, 95 Nev. 497, 500, 596 P.2d 501, 503 (1979).
 

 In the instant case, Hennie was convicted largely on the basis of Brown’s and Marineau’s testimony. Hennie did not learn of their conspiracy to commit murder, along with Brown’s $2500.00 indebtedness to Marineau, until after his trial had concluded. Thus, the jury was never presented with this crucial impeachment testimony. Because of the importance of Brown’s and Marineau’s testimony in convicting Hennie, knowledge of the conspiracy and its impact on Marineau’s and Brown’s credibility would have been extremely material to Hennie’s defense. Additionally, even with the exercise of reasonable diligence, Hennie’s ability to discover the conspiracy and produce evidence of it during trial was limited due to the secretive context within which Brown and Marineau had entered their conspiracy.
 

 Further, evidence of Brown’s and Marineau’s conspiracy to commit murder and Brown’s substantial indebtedness to Marineau is not cumulative. At trial, the jury was under the mistaken impression that Marineau was a neutral and unbiased witness, rather than a co-conspirator in a plot to murder his ex-wife. Likewise, Brown testified that he had no motive to steal because he was not in debt, had a good job, was recently married, and would not jeopardize the quality of his life by engaging in further criminal activity. The jury did not hear evidence of Brown’s $2500.00 indebtedness to Marineau, nor the fact that he accepted $600.00 from Marineau — with which he purchased the orange van that was used during the Mission Linen burglary — to hire someone to murder Marineau’s ex-wife. This newly discovered evidence, which the jury never heard, severely undermines the credibility of the State’s two key witnesses upon whose testimony Hennie was largely convicted.
 

 Because of the tenuous link connecting Hennie to these crimes, we conclude that a different result would have been probable had the jury been presented with this newly discovered evidence.
 
 *1291
 
 Moreover, because of the critical nature of Brown’s and Marineau’s testimony, and the probability of a different verdict had they been further impeached, the newly discovered impeachment evidence comprises Hennie’s best evidence which sufficiently justifies granting Hennie a new trial.
 
 See King,
 
 95 Nev. at 500, 596 P.2d at 503.
 

 Based on the foregoing, we conclude that the district court abused its discretion in denying Hennie’s motion for a new trial based on the newly discovered evidence of Brown’s and Marineau’s conspiracy to commit murder, and Brown’s substantial indebtedness to Marineau. Accordingly, we reverse Hennie’s conviction and remand for a new trial.
 

 [1]
 

 Hennie also argues that there was insufficient evidence to establish probable cause to bind him over for trial. Further, Hennie argues that the district court erred in denying his motion for separate trials, denying him the opportunity to fully cross-examine two adverse witnesses, and in refusing to provide the jury with his proposed jury instructions. He also claims that the prosecutor committed prosecutorial misconduct by commenting on Hennie’s post-arrest silence during closing arguments. After thorough consideration of the record on appeal and the briefs filed herein, we conclude that these additional arguments are without merit.
 

 [2]
 

 In relevant part, NRS 176.515 provides:
 

 1. The court may grant a new trial to a defendant ... on the ground of newly discovered evidence.
 

 3. A motion for a new trial based on the ground of newly discovered evidence may be made only within 2 years after the verdict or finding of guilt.