An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

RAYMOND CHRISTOPHER SHARPE
A/K/A RAYMOND CHRISTOPHER
SHARP,
Appellants,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61584

**FILED**

APR 0 8 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict of guilty on thirteen counts. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

Appellant Raymond Sharpe was involved in an altercation with Alicia Grundy in July 2011. The record reflects that on the day in question, police responded to a 911 call from Sharpe's neighbors, in which they indicated that Grundy, who resided in Sharpe's house, was banging on their door. She was almost naked and appeared to be bleeding from a head injury. The neighbors then witnessed Sharpe exit his house, grab Grundy by the hair, and drag her back into his house. When police arrived on the scene, Grundy ran out of the house. She told them that she was a prostitute, Sharpe was her pimp, and he had become angry and pistol-whipped her because she was trying to quit prostitution and had a new boyfriend. She further stated that she tried to run away, but Sharpe came out and dragged her back into the house. Once back in the house, Sharpe began loading a gun and threatened to kill her if the police came.

Sharpe was apprehended by officers a short time later while jogging down the street a couple of blocks from the residence. He told

14-11088

officers that he had gone to get a bottle of water and did not know what had happened to Grundy. At the house, police found multiple weapons and discovered multiple vehicles, including some that were stripped.

Sharpe was arrested and ultimately charged with thirteen separate counts, including nine counts resulting from the altercation with Grundy and four counts resulting from the stripped vehicles found at the house.[1] A jury convicted Sharpe on all counts, and he now appeals his conviction on the following grounds: (1) there was insufficient evidence to support his convictions on counts one to nine; (2) the prosecution engaged in misconduct warranting reversal of his convictions; (3) the district court erred in allowing an amended superseding indictment, adding four charges, only a few days before trial; (4) the district court erred in failing to sua sponte sever the fraudulent activity charges; (5) the district court improperly precluded a defense witness from testifying; (6) the district court erred in denying his motions for new trial; and (7) cumulative error warrants a new trial. Because we conclude that Sharpe's claims of error are meritless, we affirm the judgment of conviction.

---

[1]Sharpe was charged with the following counts: (1) coercion; (2) first degree kidnapping with use of a deadly weapon resulting in substantial bodily harm; (3) battery constituting domestic violence resulting in substantial bodily harm; (4) battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm; (5) burglary; (6) living with a prostitute; (7) living from the earnings of a prostitute; (8) pandering with force; (9) assault with a deadly weapon; (10) operate premise to alter, destroy or disassemble motor vehicles; (11) possession of stolen vehicle; (12) possession of stolen property; and (13) deface, destroy or alter identification number or mark. Four additional firearms charges were originally included in the indictment, but those charges were severed prior to trial.

*Sufficiency of the evidence*

Sharpe argues that his convictions on counts one to nine should be set aside because the State failed to present sufficient evidence to sustain each of the crimes charged. We disagree. To assess the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted). In rendering its decision, the jury is tasked with "assess[ing] the weight of the evidence and determin[ing] the credibility of witnesses." *Id.* at 202-03, 163 P.3d at 414 (internal quotations omitted). A jury is permitted to rely on both direct and circumstantial evidence in returning its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). This court has consistently held that "circumstantial evidence may constitute the sole basis for a conviction." *Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993); *see also Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980).

*Sufficient evidence supports count one - coercion*

Sharpe challenges the sufficiency of the evidence as to the coercion charge, arguing that Grundy's inconsistent testimony failed to establish the necessary elements of the crime. NRS 207.190(1)(a) provides, in pertinent part, that it is unlawful to "[u]se violence or inflict injury" in order to "compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing." The State presented testimony from two of Sharpe's neighbors who testified that they saw Sharpe come out of his house, grab Grundy by her hair, and drag her into his house. Multiple Las Vegas Metropolitan Police Department (LVMPD) officers and a private investigator also testified that Grundy told

Supreme Court
of
Nevada

(O) 1947A

3

them that Sharpe dragged her back into the house against her will. Although Grundy testified at trial that it was Sharpe's cousin, not Sharpe, who came out and escorted her back into the house, the jury was free to weigh the evidence and determine the credibility of the witnesses, including Grundy. *See Rose*, 123 Nev. at 202-03, 163 P.3d at 414. We conclude that the testimony, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find Sharpe guilty beyond a reasonable doubt of count one.

*Sufficient evidence supports count two – first-degree kidnapping with the use of a deadly weapon resulting in substantial bodily harm*

Sharpe argues that the State failed to show that he "moved" Grundy, a required element of the crime charged. NRS 200.310(1) provides that "[a] person who willfully seizes, confines, . . . kidnaps or carries away a person by any means whatsoever with the intent to hold or detain" is guilty of first-degree kidnapping. In addition to the testimony recounted above, the record also demonstrates that once Sharpe dragged Grundy back into his house, he immediately began loading a gun and threatening to kill Grundy if the police showed up. Viewing the evidence presented in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that Sharpe was guilty of count two.

*Sufficient evidence supports counts three and four – battery constituting domestic violence resulting in substantial bodily harm; battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm*

Sharpe was convicted of battery constituting domestic violence resulting in substantial bodily harm, and battery constituting domestic violence with the use of a deadly weapon resulting in substantial bodily harm. Sharpe argues that there was no evidence a battery took place.

"'Battery' means any willful and unlawful use of force or violence upon the person of another." NRS 200.481(1)(a). Grundy testified that Sharpe kicked her during their altercation. The State also presented testimony from four different law enforcement officers who all stated that on the day of the incident Grundy told them that Sharpe had pistol-whipped her, despite Grundy's trial testimony to the contrary. Additionally, the medical evidence adduced at trial showed that on the day of the incident Grundy was treated at the hospital for a contusion and laceration near her right eye. We conclude that the testimony, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find Sharpe guilty beyond a reasonable doubt of counts three and four.

*Sufficient evidence supports count five - burglary*

Sharpe argues that he was wrongly convicted of burglary. "[A] person who, by day or night, enters any house . . . with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses, is guilty of burglary."[2] NRS 205.060(1). This court has further clarified that "forcible entry is not an element of burglary," and a person commits burglary when entering the premises "with a felonious intent." *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1113 (2002). Testimony adduced at trial demonstrated that subsequent to Grundy fleeing to the neighbors' house after the initial altercation, Sharpe dragged her back into the house where he immediately began loading a gun and threatening to kill her if the

---

[2]Sharpe did not raise, and we do not consider, the effect, if any, his ownership of the house would have on the elements of burglary. We note, however, that Sharpe maintains he did not occupy the residence at the time of the incidents that led to his convictions.

police showed up. Viewing this evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that Sharpe formulated the intent to assault[3] Grundy before he re-entered the house with her.

*Sufficient evidence supports count six – living with a prostitute*

Sharpe was convicted of living with a prostitute. NRS 201.360(1)(e) makes it a felony to "[l]ive[ ] with . . . a common prostitute." Sharpe argues the State did not prove that he resided at the residence during the relevant time frame alleged in the indictment—between March 1, 2011 and July 2, 2011. However, the statute of limitation on a crime of this nature is three years, *see* NRS 171.085(2), and, timing is not an essential element of a crime charged pursuant to NRS 201.360(1)(e).

Because timing is not an essential element of the crime charged, the State only needed to prove that Sharpe resided with Grundy at the residence sometime in the three years prior to the filing of the indictment. *See Arnold v. United States*, 336 F.2d 347, 353 (9th Cir. 1964) (stating that "'the date of an alleged offense as stated in the indictment is not binding so as to limit the proof to that specific date; . . . the proof may fix the offense on any date within the bar of the [s]tatute of [l]imitations'") (quoting *Winslett v. United States*, 124 F.2d 302, 303 (5th Cir. 1941))); *see also Wilson v. State*, 121 Nev. 345, 368-69, 114 P.3d. 285, 301 (2005) (noting that "there is no requirement that the State allege exact dates unless the situation is one in which time is an element of the crime

---

[3]"'Assault' means: (1) Unlawfully attempting to use physical force against another person; or (2) Intentionally placing another person in reasonable apprehension of immediate bodily harm." NRS 200.471(1)(a)(1)-(2).

 

charged[,] . . . provided that the dates listed are sufficient to place the defendant on notice of the charges").

An LVMPD officer testified at trial that on July 2, 2011, Grundy told him that the home she resided in was owned by Sharpe and that Sharpe had last stayed at the house about four months prior to the altercation. The State also introduced photographic evidence depicting letters and packages, addressed to Sharpe and to his alias Rashad Shelton, that were found in the house with dates ranging from 2000 to 2009. Other evidence introduced at trial included the discovery of two men's size bullet proof vests in the master bedroom and multiple weapons found throughout the residence, including rifles and hand guns, all of which according to Grundy belonged to Sharpe. Finally, Sharpe's two next door neighbors who testified stated that Sharpe was their neighbor, although they acknowledged that they were uncertain whether he was actually living at the house in July 2011. Given the evidence adduced at trial, we conclude that there was substantial evidence presented for the jury to conclude beyond a reasonable doubt that Sharpe was guilty of count six.

*Sufficient evidence supports court seven – living from the earnings of a prostitute*

Sharpe was also convicted of living from the earnings of a prostitute. "A person who knowingly accepts, receives, levies or appropriates any money or other valuable thing, without consideration, from the proceeds of any prostitute" is guilty of living from the earnings of a prostitute. NRS 201.320(1). At trial, an officer testified that Grundy told him that she was a prostitute and Sharpe was her pimp. Grundy also told the officer that she had recently tried to give Sharpe $40,000 to "get[ ] out of the game." According to Grundy, Sharpe took the money but then

told her on the day of the incident that she was not done. Further, an LVMPD detective testified that Grundy indicated she worked as a prostitute for Sharpe and that she gave Sharpe between $30,000 and $40,000 of her prostitution earnings at a time. Viewing this testimony in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that Sharpe was guilty of count seven.

*Sufficient evidence supports count eight – pandering with force*

Sharpe contends that there was insufficient evidence as to count eight because there was no evidence that Grundy was ever "caught in a single act of prostitution with [him]." However, the statutes under which Sharpe was charged contain no such requirement. NRS 201.300(1) (2011) provides that any person who "[i]nduces, persuades, encourages, inveigles, entices or compels a person to become a prostitute or to continue to engage in prostitution . . . is guilty of pandering." Additionally, the penalty is enhanced "[i]f physical force or the immediate threat of physical force is used." NRS 201.300(2)(a)(1) (2011).

Several witnesses testified that Grundy told them that she was a prostitute, that Sharpe was her pimp, and that she had attempted to quit prostitution by paying him $40,000, but that he would not let her go and had become physically violent with her. Furthermore, a detective testified that Grundy told him that Sharpe became physically violent towards her because Sharpe believed Grundy was giving another man her prostitution earnings. The detective additionally testified that Grundy told him that Sharpe forced her to become a prostitute at age 17 or 18. Viewing this testimony in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that Sharpe was guilty of count eight.

*Sufficient evidence supports count nine – assault with the use of a deadly weapon*

Finally, Sharpe challenges whether the State presented sufficient evidence to convict of him of assault with a deadly weapon. A person commits an assault by either "[u]nlawfully attempting to use physical force against another person;" or "[i]ntentionally placing another person in reasonable apprehension of immediate bodily harm." NRS 200.471(1)(a)(1)-(2). This court has held that an assault must go beyond "'[m]ere menace'"; rather "'[t]here must be an effort to carry the intention into execution.'" *Anstedt v. State*, 89 Nev. 163, 165, 509 P.2d 968, 969 (1973) (quoting *Wilkerson v. State*, 87 Nev. 123, 126 482 P.2d 314, 316 (1971)).

Multiple witnesses testified that Grundy stated that Sharpe had pointed a gun at her head and verbally threatened to shoot her if the police showed up. The State also presented evidence of a loaded rifle that was found behind the couch cushions in the living room and testimony from an LVMPD forensic analyst who stated that Sharpe's palm print was found on that rifle. We conclude that this evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find Sharpe guilty beyond a reasonable doubt of count nine.

*The State did not engage in prosecutorial misconduct*

Sharpe asserts that there were instances of prosecutorial misconduct during his trial that mandate reversal of his convictions. In assessing claims of prosecutorial misconduct, this court must first determine whether the prosecutor's conduct was improper, and if so, the court must then determine whether such conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Acts of misconduct will not warrant reversal if they are determined to be

harmless error. *Id.* However, in order to apply harmless-error review, the defendant must have objected to the misconduct at trial. *Id.* at 1190, 196 P.3d at 477. If not objected to, then this court applies plain-error review. *Id.* Under plain-error review, an act of misconduct "does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing 'actual prejudice or a miscarriage of justice.'" *Id.* (quoting *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003)).

Sharpe first claims that the State improperly implied the existence of DNA evidence, which was not available at the time of trial, when it questioned an LVMPD crime scene analyst as to whether she had attempted to collect DNA samples from certain pieces of evidence found at the scene. The State argues that it did not imply that such evidence was inculpatory, but rather merely introduced evidence that samples had been collected from certain pieces of evidence while acknowledging that testing results from the DNA samples collected were not yet available. This was so that the jury would not speculate as to why the State did not admit any DNA evidence.

In *United States v. Manning*, the First Circuit Court of Appeals considered comments made by a prosecutor concerning the lack of useable fingerprint evidence on a key piece of evidence. 23 F.3d 570, 572 (1st Cir. 1994). The court stated that "[i]nfosfar as the comments were intended to relieve the jury of any misapprehension that there were *no* fingerprints on these items, these comments were not improper . . . . [H]owever, the insinuation that the partial prints were inculpatory . . . was impermissible." *Id.* at 573. Here, because the prosecutor did not attempt to imply that the DNA collected was

inculpatory, we conclude that there was no prosecutorial misconduct in this instance.

Sharpe next asserts that the prosecutor committed misconduct by commenting on facts not in evidence. Specifically, during the prosecutor's rebuttal closing argument, she referenced a towel, visible in one of the State's photographs, and indicated that perhaps the towel was used to wipe any blood off the guns found in the home.[4] Sharpe contends that because the State presented no evidence that this towel was ever tested for blood or body fluid, and no witness testified about the towel, the State went beyond fair comment on the evidence. The State argues that the prosecutor can ask the jury to draw logical inferences from the evidence, and it never specifically said that the towel contained blood.

Generally, it is improper for the prosecutor to make reference to evidence not offered at trial. *See Miller v. State*, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005). And, while the prosecutor may have gone too far in commenting on evidence not introduced at trial, we nevertheless conclude that her comments do not constitute plain error.[5] Sufficient evidence was presented to show that Grundy was pistol-whipped by Sharpe, including Grundy's statements and medical evidence as to her injuries. Furthermore, the State clearly informed the jury that it had not received

---

[4]The prosecutor commented as follows: "Now, Mr. Stein also, going back to the evidence and beyond a reasonable doubt, ridiculed the State's evidence about the guns in the drawer saying there's no blood on those guns either . . . . [There] is a towel . . . . Something got wiped off."

[5]Sharpe made no objection during the trial to the prosecutor's comments. Thus, they are reviewed for plain error. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008).

back any results from the testing done on DNA collected at the scene. Therefore, Sharpe has failed to demonstrate "actual prejudice or a miscarriage of justice" warranting reversal. *Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (internal quotations omitted).[6]

*The district court did not err when it arraigned Sharpe on the superseding indictment without informing him that he could continue the arraignment until after he received a copy of the grand jury transcript*

Sharpe next contends that the district court violated the Due Process Clause when it arraigned him three days after a superseding indictment was returned against him, which added four additional charges. He contends the district court was required to inform him of his right to continue the arraignment and the entrance of his plea until ten days after receipt of the grand jury transcript under NRS 172.225(4). The State argues that the Due Process Clause does not require the district court to inform Sharpe of his right to review the grand jury transcripts before arraignment, and that the plain meaning of NRS 172.225 required Sharpe to make a motion for a continuance. The State further argues that the district court did not commit error, even if the Due Process Clause requires the court to inform Sharpe of the statute, because the court did query Sharpe regarding his decision to waive his right.

In Nevada, a defendant who did not receive a copy of the grand jury transcript "is entitled upon motion to a continuance of the defendant's arraignment until a date 10 days after the defendant actually

---

[6]Sharpe also contends that the prosecutor committed misconduct by questioning a witness as to the maximum penalty for a misdemeanor battery. However, Sharpe cites no authority for his contention that this was error; thus, we do not consider this argument. *See Tinch v. State*, 113 Nev. 1170, 1175 n.3, 946 P.2d 1061, 1064 n.3 (1997).

receives a copy." NRS 172.225(4). Here, Sharpe failed to make the required motion under the statute. Moreover, during the arraignment, the district court asked Sharpe if he had a chance to review the new charges and if he wished to continue to invoke his right to speedy trial, "knowing that [it would] preclude [his] attorney from being able to review the transcript and possibly file a writ of habeas corpus." Sharpe responded in the affirmative. Thus, even if the Due Process Clause required the district court to inform Sharpe of his right to continue the arraignment, we conclude that the district court complied with this requirement and no error was committed.[7]

*The district court did not err by failing to sua sponte sever the newly added fraudulent activities charges from the original charges*

Sharpe argues that the district court had an affirmative duty to sever the offenses under NRS 174.165 because "it appears that a defendant or the State of Nevada is prejudiced by a joinder of offenses." NRS 174.165(1). The State argues that Sharpe was required to make a motion and that the district court has no duty to sua sponte sever the charges.

Regardless of whether the district court should have sua sponte severed the charges or whether Sharpe was first required to file a motion for severance, Sharpe has failed to demonstrate substantial prejudice or show that failure to sever the charges detrimentally affected the jury's verdict. *See Tabish v. State*, 119 Nev. 293, 304, 72 P.3d 584, 591

---

[7]We note that Sharpe fails to cite authority to support his position that due process required the district court to specifically inform him of his right to continue the trial, and we thus do not address this argument here. *See Tinch*, 113 Nev. at 1175 n.3, 946 P.2d at 1064 n.3.

(2003) (stating that "'[t]he test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever'" (quoting *Honeycutt v. State*, 118 Nev. 660, 667, 56 P.3d 362, 367 (2002), *overruled on other grounds by Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005))); *see also Mitchell v. State*, 105 Nev. 735, 739, 782 P.2d 1340, 1343 (1989) (stating that errors resulting from misjoinder will be reversed "only if the error has a 'substantial and injurious effect or influence in determining the jury's verdict'" (quoting *United States v. Lane,* 474 U.S. 438, 449 (1986))). Rather, Sharpe merely argues that the four additional counts were unrelated to the original charges and "fundamentally changed both the prosecution and defense at trial" without offering any explanation of how that change was injurious or influenced the jury. Thus, we conclude that reversal is not warranted.

*The district court did not abuse its discretion in precluding a defense witness from testifying*

Next, Sharpe argues that the district court impermissibly excluded his cousin Eugene Smith from testifying in violation of the Sixth Amendment. The State argues that the district court did not abuse its discretion when it did not permit Smith to testify because Sharpe knew prior to trial that Smith was a potential witness, and Smith did not have proper testimony to give. "This court reviews a district court's decision whether to allow an unendorsed witness to testify for abuse of discretion." *Mitchell v. State*, 124 Nev. 807, 819, 192 P.3d 721, 729 (2008).

"A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The United States Supreme Court has recognized that the exclusion of evidence in a criminal trial abridges

an accused's right to present a defense only where the exclusion is "arbitrary or disproportionate to the purpose[ it is] designed to serve." *Id.* at 308 (internal quotations omitted).

Under NRS 174.234(1), both the prosecution and the defense must submit to each other, at least five days prior to trial, written notice of all witnesses they intend to call. In this case, Sharpe first indicated his intent to call Smith as a witness on the fifth day of trial. The district court determined that Sharpe should have known of Smith's potential value to his case prior to trial. We agree.

In Grundy's initial statements made to a detective on the day of the altercation, she indicated that Smith was present in the house that day. Furthermore, although defense counsel claimed to have only learned of Smith during Grundy's trial testimony, in his opening statement, he specifically referred to the fact that a "cousin" was present in the house and witnessed the events. And, defense counsel specifically stated it was the "cousin" who went across the street and escorted Grundy back into the house. In addition, Grundy testified that Smith witnessed the whole incident and was the one who brought her back into the house. If that were the case, then Sharpe knew that Smith was an eyewitness who could rebut many of the crimes charged against him, and he withheld that information from his attorney. Accordingly, we conclude that the district court did not abuse its discretion when it excluded Smith's testimony.

*The district court did not abuse its discretion in denying Sharpe's motions for new trial*

"'The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent palpable abuse.'" *Domingues v. State*, 112 Nev. 683, 695, 917 P.2d 1364, 1373 (1996) (quoting *Pappas v. State ex rel. Dep't of*

*Transp.*, 104 Nev. 572, 574, 763 P.2d 348, 349 (1988)). Sharpe first argues that the district court erred when it denied his motion for a new trial based on the district court's exclusion of Smith. The State argues that Sharpe has not shown how the court's enforcement of NRS 174.234 violated his constitutional rights or that the district court's denial of the motion was an abuse of discretion. Because we conclude that the district court properly excluded Smith from testifying at trial, we conclude that the district court did not abuse its discretion in refusing to grant a new trial on this basis.

Sharpe also argues that newly discovered evidence of text messages indicating a romantic relationship between Grundy and LVMPD Detective Christopher Baughman created grounds for the district court to grant Sharpe's motion for a new trial. Sharpe contends that the district court should have granted the motion because the evidence was not disclosed to Sharpe before trial and, if it had been presented to the jury, a different outcome would have occurred.

If a defendant makes a motion within two years of conviction, the district court may grant a motion for a new trial based on newly discovered evidence. NRS 176.515(3). The test to apply when considering whether to grant a new trial motion based on newly discovered evidence is as follows:

> (1) the evidence must be newly discovered; (2) it must be material to the defense; (3) it could not have been discovered and produced for trial even with the exercise of reasonable diligence; (4) it must not be cumulative; (5) it must indicate that a different result is probable on retrial; (6) it must not simply be an attempt to contradict or discredit a former witness; and (7) it must be the best evidence the case admits.

*Hennie v. State*, 114 Nev. 1285, 1289-90, 968 P.2d 761, 764 (1998). Applying this test to the facts presented in this case, we conclude that the district court also did not abuse its discretion in denying Sharpe's motion on this basis.

First, our review of the record demonstrates that the evidence was not newly discovered. During trial, Sharpe's attorney specifically asked Detective Baughman whether he exchanged text messages with Grundy. When Detective Baughman stated that he had, Sharpe's attorney then proceeded to question Detective Baughman about the content of specific text messages, particularly those mentioning Sharpe. Looking to third factor, even if Sharpe did not know about all of the text messages prior to trial, it is evident that he had obtained at least some of them. Thus, the rest could "have been discovered and produced . . . with the exercise of reasonable diligence." *Hennie*, 114 Nev. at 1290, 968 P.2d at 764. Finally, Grundy testified unwillingly for the State, seemingly altered her testimony in favor of Sharpe by changing her story, and claimed that she lied to detectives at the scene. Thus, Grundy was clearly not biased toward the State by this alleged relationship. Therefore, the only potential impact of the text messages goes to Detective Baughman's bias. A motion for a new trial based upon newly discovered evidence should be denied if it is "simply . . . an attempt to contradict or discredit a former witness." *Id.*

*Cumulative error does not warrant reversal*

Finally, Sharpe argues that cumulative error violated his right to a fair trial. Cumulative error may deny a defendant a fair trial even if the errors, standing alone, would be harmless. *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008). "When evaluating a claim of

cumulative error, we consider the following factors: '(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.'" *Id.* (quoting *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000)).

Although Sharpe attempts to argue that the crimes charged against him were not as serious as "crimes against children or violent crimes that result in significant injury and/or death," there is no basis for his argument. He was charged with a number of serious crimes, including kidnapping and assault. Because we have concluded that Sharpe's assignments of error are meritless, we further conclude that Sharpe's cumulative error challenge is unavailing.

For the reasons set forth above, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Pickering

cc:    Hon. Elissa F. Cadish, District Judge
       Donald J. Green
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk