# IN THE SUPREME COURT OF THE STATE OF NEVADA

PAUL BRYAN ROBERTS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72077

FILED

DEC 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of four counts of sexual assault with a minor under fourteen years of age, four counts of lewdness with a child under the age of fourteen, and one count of child abuse, neglect or endangerment. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

### FACTS AND PROCEDURAL HISTORY

Paul Roberts was married to Valerie Roberts and resided in Las Vegas with their children, O.R. and M.R., and Valerie's children from a previous relationship, A.M. and M.M. In March of 2013, Valerie left for Georgia with all four children and filed for divorce the following July. On September 5, 2013, A.M. wrote a note to her grandmother alleging that Roberts had inappropriately touched her. A.M. was interviewed twice by law enforcement in Gwinnett County, Georgia, and charges were brought by the District Attorney's office in Clark County, Nevada.

The State filed a criminal complaint against Roberts, charging him with two counts of sexual assault with a minor under fourteen years of age and one count of lewdness with a child committed against A.M. During Roberts' preliminary hearing, A.M. testified that Roberts rubbed her butt and vagina, and placed his finger in her vagina a number of times starting

when she was in the fourth grade and continuing until the sixth grade, when her mother took her to Georgia. At the conclusion of A.M.'s testimony, the State moved to amend the complaint to charge Roberts with eight additional counts of sexual assault, an additional count of child abuse resulting in substantial mental harm against A.M., and an additional count of child abuse not resulting in substantial mental harm based on Roberts' alleged conduct towards M.R. The justice court denied the State's motion because it did not comply with that court's requirement that all amendments be made prior to the preliminary hearing, but bound Roberts over on the original counts.

In the district court, the State moved to amend the information, to add two counts each of sexual assault and lewdness for acts against A.M. on four different occasions over a three-year period, for a total of eight counts of sexual assault and lewdness. The State further sought to add a count of child abuse committed against A.M. and a count of child abuse committed against M.R. Over Roberts' opposition, the district court granted the State's motion in part, allowing the State to amend the complaint to add one count each of sexual assault and lewdness for each of the periods listed by the State and the two additional counts of child abuse.

At trial, the State introduced testimony from A.M. that she had engaged in pulling her own hair out due to the stress caused by Roberts' sexual abuse. Roberts requested an independent psychological evaluation, which the court denied, and sought to introduce expert testimony that would attribute this behavior to other causes. The State informed the court that it had not received a report detailing to what the expert would testify, and Roberts was ordered to disclose a report by the end of the day. It

appears from the record that no report was introduced and Roberts made no further attempts to introduce expert testimony.

The issue of A.M.'s hair came up again during closing arguments when the State used a presentation showing Roberts' mugshot alongside a picture of A.M. showing missing patches of hair. Roberts moved for a mistrial, asserting that it was improper for the State to argue Roberts' abuse caused A.M. to pull out her own hair because causation could only be proven by expert testimony. The district court denied Roberts' motion. The jury found him guilty of four counts of sexual assault with a minor under fourteen years of age; four counts of lewdness with a child under the age of fourteen; and one count of child abuse, neglect or endangerment, while acquitting him of the child abuse against M.R.

Roberts subsequently moved for a new trial reasserting many of the same issues raised at trial, but requesting an evidentiary hearing to allow Jeremiah Morrison, A.M.'s biological father, to testify. Jeremiah testified that Valerie had told him Roberts was "guilty of the other charges but not the sexual stuff," threatened to deny Jeremiah visitation if he came forward with her statements, and stated she was getting revenge. On cross-examination, he testified that he did not know A.M. and the last time he saw her she was four years old and he did not know if A.M. did or would make false allegations at Valerie's behest. Jeremiah further testified that when he spoke to Roberts' trial counsel, counsel stated that there was no evidence of Roberts' guilt, and that he had been "doing this a long time," which made him certain Roberts was innocent. The State then called Valerie as a witness and she denied telling Jeremiah that any of the allegations against Roberts did not occur. The district court denied Roberts' motion, concluding that Jeremiah's testimony was vague as to what

precisely Valerie allegedly said, and at most suggested that Valerie did not believe A.M. Roberts now appeals his convictions, assigning error to the district court's (1) decision granting the State's motion to amend the information; (2) decision denying his motions for mistrial based on prosecutorial misconduct, an independent psychological evaluation of A.M., and a new trial based on newly discovered evidence; and (3) evidentiary decisions. Having considered his arguments and the record on appeal, we perceive no error and therefore affirm.

## DISCUSSION

*The district court did not err in allowing the State to amend the information*

Roberts argues that NRS 173.035(2) only allows an amended information when the defendant is discharged by the justice court and the State may not amend the information after all evidence has been presented at the preliminary hearing. We disagree.

The purpose of a preliminary hearing is to determine whether there is probable cause that an offense has been committed by the accused and either bind them over for trial in the district court or discharge them. *See* NRS 171.206. NRS 173.035(2) allows an information to be amended when the justice court has committed egregious error in finding there is not probable cause to bind over a defendant on a charge. *See Cranford v. Smart*, 92 Nev. 89, 91, 545 P.2d 1162, 1163 (1976).

The justice court is charged with determining whether probable cause supports the charges being pursued by the State. Here, the justice court implicitly discharged Roberts of the additional charges brought by the State when it declined to perform its duty to determine whether the allegations were supported by probable cause. Importantly, Roberts does not dispute that the State presented evidence constituting probable cause during the preliminary hearing. As a result, the justice court committed

SUPREME COURT
OF
NEVADA

(O) 1947A

4

egregious error in refusing to bind Roberts over on the charges pursued by the State, and the district court did not err in allowing the State to amend the information.

*The district court did not abuse its discretion in denying Roberts' motion for mistrial*

Roberts argues that it was improper for the State, during closing arguments, to show his mugshot alongside a picture of A.M. that showed missing patches of hair because A.M.'s testimony was insufficient to link Roberts' sexual assaults to the condition of her hair, and she was effectively permitted to testify as an expert witness. He asserts that placing the pictures side-by-side was so prejudicial as to constitute prosecutorial misconduct requiring a mistrial. We disagree.

This court reviews a district court's denial of a motion for mistrial for an abuse of discretion. *Jeffries v. State*, 133 Nev., Adv. Op. 47, 397 P.3d 21, 25 (2017) (citing *Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006)). A defendant's motion for mistrial may be granted where prejudice has denied the defendant a fair trial. *Id.* (citing *Rudin v. State*, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004)). Lay witnesses are permitted to testify as to opinions or inferences rationally grounded in their own perceptions, NRS 50.265, and this court reviews the district court's evidentiary decisions for an abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).

Here, A.M.'s testimony was limited to her own experiences and her own motivation as to why she pulled her own hair out. Nothing within her statements relied on or required specialized knowledge. *See* NRS 50.275 (providing that an expert witness is one that utilizes their specialized knowledge to assist the trier of fact in understanding evidence to determine a fact at issue). Furthermore, the cases Roberts cites to for

the proposition that expert testimony was necessary are all civil cases in which a defendant was attempting to call a witness with no direct knowledge of the facts at issue to rebut a plaintiff's argument of medical causation. *See Rish v. Simao*, 132 Nev. 189, 197, 368 P.3d 1203, 1209 (2016); *Williams v. Eighth Judicial Dist. Court*, 127 Nev. 518, 526-29, 262 P.3d 360, 365-67 (2011). These cases are clearly distinct from A.M. providing testimony as to her own mental state and motivation for her actions. As a result, the district court did not abuse its discretion in allowing this testimony or allowing the State during closing arguments to make reference to the connection between sexual abuse and A.M. pulling her own hair out, and it thus did not abuse its discretion in denying Roberts' motion for a mistrial on this ground. *Jeffries*, 133 Nev., Adv. Op. 47, 397 P.3d at 25.

Additionally, the State did not use Roberts' booking photo improperly or in a manner so inherently prejudicial or inflammatory as to require a mistrial. *See Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008) (observing that in evaluating a claim of prosecutorial misconduct, this court engages in a two-step analysis in which it determines: (1) if the prosecutor's conduct was improper and (2) whether the severity of the misconduct warrants reversal). Roberts did not oppose the admission of his booking photo into evidence during trial. In denying Roberts' motion, the district reasoned that A.M.'s testimony established a causal link between the abuse and hair pulling and both pictures had been properly admitted into evidence such that State could use them in its closing argument. The State's presentation that included his booking photo was not used at an improper stage of trial, as in *Watters v. State*, 129 Nev. 886, 889-92, 313 P.3d 243, 247-48 (2013), nor did it implicate a criminal history,

as in *United States v. Reed*, 376 F.2d 226, 228 (7th Cir. 1967). Consequently, the State did not engage in any improper conduct supporting a finding of prosecutorial misconduct, Roberts was not denied a fair trial, and the district court did not abuse its discretion in denying his motion for a mistrial.

*The district court did not abuse its discretion in denying Roberts' request for an independent psychological evaluation of A.M.*

Roberts argues that the district court abused its discretion by denying his motion for an independent psychological evaluation of A.M. because the State utilized her as an expert witness, her testimony was uncorroborated, and there was a reasonable basis on which to question her veracity. We disagree.

This court reviews a district court's decision to grant or deny a motion for an independent psychological evaluation for an abuse of discretion. *Abbott v. State*, 122 Nev. 715, 723, 138 P.3d 462, 467 (2006). In determining whether to grant a defendant's motion for an independent psychological evaluation of a victim, the district court will weigh whether: (1) the State used a psychological expert of its own, (2) there is little evidence to corroborate the victim's testimony, and (3) there is a reasonable basis to believe the victim's mental state affects her veracity. *Id.* at 724, 138 P.3d at 468.

Here, as discussed above, A.M. did not testify as an expert witness and the State did not otherwise use an expert witness. The evidence corroborating A.M.'s testimony regarding hair pulling included a copy of a letter she wrote to her grandmother in 2013 explaining why she pulled out her hair, A.M.'s testimony regarding Roberts' sexual abuse, and testimony from others regarding an abusive environment in the home. There was also no reasonable basis on which to conclude that A.M.'s mental

state affected her veracity. Roberts creates no clear connection between general anxiety and A.M.'s truthfulness. Furthermore, A.M. attributing pulling her hair out to different causes in the past is categorically different from the circumstances addressed in *Abbott*. In *Abbott*, this court found a reasonable basis to question the veracity of the victim's testimony of sexual abuse because she had previously made a number of false allegations of sexual misconduct and been exposed to depictions of sex that may have shaped her testimony. 122 Nev. at 731, 137 P.3d at 473. Here, in contrast, there was no evidence of prior false allegations or exposure to sexual activities. In weighing these three factors, we cannot conclude that the district court abused its discretion in denying Roberts' motion for an independent psychological evaluation.[1]

*The district court did not abuse its discretion in admitting evidence that Roberts abused the family dog or disciplined the children*

Roberts argues that the district court erred in allowing testimony that he used harsh, physical discipline on the children and excessively used a shock collar on and kicked the family dog. He contends that this evidence was not relevant to explain why A.M. delayed in disclosing Roberts' sexual assaults, was not proven by clear and convincing

---

[1]Roberts raises a number of other issues concerning his cross-examination A.M. about hair-pulling and the denial of his motion for an independent psychological examination without fully articulating an argument around any of them and neglecting to provide record citations or reference to legal authority. As such, we do not address them here. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). Regardless, the record does not support his general contentions that he was denied the right to meaningfully present a defense and cross-examine A.M.

SUPREME COURT
OF
NEVADA

(O) 1947A

evidence due to conflicting accounts, and evidence of animal abuse was inflammatory and prejudicial. We disagree.

This court reviews the admission of prior bad act evidence for an abuse of discretion. *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006). While such evidence is inadmissible to show propensity or to prove character, it may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2). A presumption of inadmissibility attaches to evidence of prior bad acts until the State has established, in a hearing outside the presence of the jury, that the prior bad act: (1) is relevant to the crime charged for a non-propensity purpose, (2) does not have its probative value substantially outweighed by the danger of unfair prejudice, and (3) it is proven by clear and convincing evidence. *Bigpond v. State*, 128 Nev. 108, 117, 270 P.3d 1244, 1250 (2012). "'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015.

Here, following the hearing, the district court found that evidence of Roberts' physical discipline of the children and his animal abuse was relevant to showing A.M.'s fear of disclosing Roberts' sexual abuse until after she was no longer residing with Roberts. The tendency of this evidence to show her fear of Roberts was relevant to rebut his theory that the allegations were fabricated for another reason and was consequently relevant for an appropriate purpose.

While each of the children provided varying accounts of the discipline and animal abuse, or indicated that they could not corroborate certain incidents, none of them were plainly contradictory. Accordingly,

Roberts' argument does not undermine the district court's finding that the prior bad acts were proven by clear and convincing evidence.

Finally, Roberts provides no legal authority that animal abuse is so uniquely and unfairly prejudicial as to constitute an abuse of the district court's discretion in admitting evidence probative of A.M.'s fear in reporting the abuse. Even acknowledging that this evidence carried some risk of prejudice, it had significant probative value in its tendency to show A.M.'s allegations were not the product of an ulterior motive. We, therefore, conclude that the district court did not abuse its discretion in admitting evidence of Roberts' treatment of the children and abuse of the family dog.[2]

*The district court did not abuse its discretion in denying Roberts' motion for a new trial*

Roberts asserts that Jeremiah's testimony was newly discovered evidence because he could not reasonably have been expected to uncover it through due diligence. He further argues that Jeremiah's testimony would have likely changed the trial's outcome because the

---

[2]Roberts also challenges two other evidentiary decisions, arguing that the court improperly allowed evidence of prior bad acts: testimony that he referred to M.M. as "alien" and withheld food from the children, and an edited recording of his initial interview with law enforcement. He did not object to the testimony that he called M.M. names and withheld food as improper, *see Carroll v. State*, 132 Nev. 269, 275, 371 P.3d 1023, 1028 (2016), and, under a plain error standard of review, we conclude that the district court's admission of such evidence does not merit reversal. *See Jeremias v. State*, 134 Nev., Adv. Op. 8, 412 P.3d 43, 48-49 (2018) (recognizing plain error is an error that impacts a defendant's substantial rights). Roberts' contention that the video of his initial interview with a detective constitutes evidence of a prior bad act is inapposite, as nothing in the recording referred to a prior bad act, but instead referred to the acts on which Roberts was being tried. Consequently, neither of these arguments merit relief.

evidence of guilt was tenuous and Jeremiah's testimony was consistent with his theory of the case that A.M. fabricated the allegations at the behest of Valerie and A.M.'s grandmother. We disagree that the district court abused its discretion in denying Roberts' motion for a new trial.

This court reviews a district court's denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion. *Walker v. State*, 113 Nev. 853, 873, 944 P.2d 762, 775 (1997). Under NRS 176.515(1), courts "may grant a new trial to a defendant if required as a matter of law or on the ground of newly discovered evidence." To be granted a new trial, the defendant must show the evidence is:

> [N]ewly discovered; material to the defense; such that even with the exercise of reasonable diligence it could not have been discovered and produced for trial; non-cumulative; such as to render a different result probable upon retrial; not only an attempt to contradict, impeach, or discredit a former witness, unless the witness is so important that a different result would be reasonably probable; and the best evidence the case admits.

*Sanborn v. State*, 107 Nev. 399, 406, 812 P.2d 1279, 1284-85 (1991) (footnote omitted) (citing *McLemore v. State*, 94 Nev. 237, 577 P.2d 871 (1978)).

As the district court noted, Jeremiah's testimony could serve only to impeach Valerie, as he was specifically unable to speak to the veracity of A.M.'s claims or whether Valerie actually instructed A.M. to fabricate the allegations and, if she had, which allegations were fabricated. In determining whether impeaching Valerie was so important as to make a different result probable, we look to this court's decision in *Hennie v. State*, 114 Nev. 1285, 968 P.2d 761 (1998). In *Hennie*, the defendant was convicted of a number of theft crimes based largely on the testimony of two witnesses with whom he lived. 114 Nev. at 1288, 968 P.2d at 763. At trial, both were

presented as unbiased witnesses, but it was later discovered that they had previously conspired to commit crimes together and one was significantly indebted to the other. *Id.* at 1290, 968 P.2d at 764. This court concluded that because Hennie's link to the charged crimes was tenuous outside of the testimony of the two witnesses and the two witnesses had a significant motive to deflect guilt onto Hennie, such impeachment evidence was likely to produce a different result in a new trial. *Id.* at 1290-91, 968 P.2d at 764.

In contrast, Jeremiah's testimony may impeach Valerie, but would not address the direct evidence of Roberts' guilt provided by A.M.'s testimony and the other evidence supporting her veracity. While the ability to impeach Valerie with Jeremiah's testimony would have been beneficial to the defense, Jeremiah's testimony did not refute A.M.'s testimony or other corroborating testimony and evidence, it would not be so critical as to make a different result probable. *See id.* at 1290, 968 P.2d at 764 (stating that "newly discovered impeachment evidence may be sufficient to justify granting a new trial if the witness impeached is so important that impeachment would necessitate a different verdict"). We, therefore, conclude that the district court did not abuse its discretion in denying Roberts' motion for a new trial.

*Cumulative error does not require reversal*

Roberts argues that cumulative error merits reversal. In determining cumulative error, this court looks to the factors of: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000). Cumulative error requires multiple errors acting in conjunction to cumulate. *Rimer v. State*, 131 Nev. 307, 333, 351 P.3d 697,

716 (2015). Because we do not find any errors at trial, there are no errors to cumulate. Accordingly, based on the foregoing, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

cc:   Hon. Eric Johnson, District Judge
      Mueller Hinds & Associates
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk